Debra Gorrell JULSEN, Appellant,
Cross-Appellee,

v.

Erick Harold JULSEN, Appellee,
Cross-Appellant.

Nos. S–1523, S–1696.

Supreme Court of Alaska.

Aug. 14, 1987.

Vincent Vitale, Kathleen A. Weeks, Law Offices of Vincent Vitale, Anchorage, for appellant/cross-appellee.

William T. Ford, Anchorage, for appellee/cross-appellant.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This is an appeal and cross-appeal from a divorce decree. Appellant/Cross-Appellee Debra G. Julsen contends that (1) the trial court lacked jurisdiction to modify its original property division; and (2) that the modifications made are not supported by the evidence. Appellant/Cross-Appellant Erick H. Julsen contends that the trial court erred (1) by declaring Debra's inheritance a non-marital asset not subject to equitable distribution; and (2) by refusing to grant him joint custody of the Julsen's two sons. We affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Facts*

Erick and Debra were married on May 26, 1972, in Anchorage, Alaska. Two children were born during the marriage, Troy Eric, born February 17, 1977, and Trace Edward, born July 13, 1979.

Erick, age 40, is a journeyman telephoneman for the Anchorage Telephone Utility, with a net monthly income of approximately $3,200. He works a regular 7:30 to 4:30 shift with weekends off.

Debra, age 33, is a self-employed bookkeeper who works a varied schedule with flexible hours. She earns between $2,000 to $3,000 monthly from this employment. Debra also receives $1,500 monthly in trust fund dividends from two estates inherited from her mother. She will receive the rest of one trust, $70,000, when she reaches the age of 35, and the other, $170,000 when she reaches 45.

Over the course of their marriage, the Julsens accumulated substantial marital assets, including, pertinent to this appeal, a family home in Eagle River and a Minnesota farm. During the marriage, Debra also inherited a large number of stocks valued at the time of divorce at $149,371.

### B. *Proceedings Below*

Debra filed for divorce in May of 1984, seeking a custody determination and property division. After a two-day trial Judge Carlson awarded the parties a divorce, determined custody and divided the Julsen's marital assets. Relevant here, the trial court held (1) that it was in the children's best interest that Debra have legal and physical custody of the Julsen's two sons; [1] (2) that Debra receive the parties' Eagle River home; that Erick receive the Minnesota property, valued at $28,500; and (3) that Debra's inheritance constituted a non-marital asset and no facts existed to justify its invasion.

Ten days after entry of the decree, Erick filed a motion entitled Motion for Reconsideration or in the Alternative a New Trial. Thirty seven days later, the trial court amended its original property division order, and *inter alia* (1) awarded the Eagle River home to Erick and (2) revalued the Minnesota property from $28,500 to $5,000 "to reflect that [Erick's] ownership [was] subject to a life estate." This appeal and cross-appeal followed.

## II. DISCUSSION

### A. *The Appeal*

#### 1. *The Trial Court Did Not Lack Jurisdiction to Modify its Original Property Division Order*

■ Initially Debra contends that the trial court lacked jurisdiction to modify its original property division order. She argues that since the trial court failed to grant reconsideration within the twenty days allowed for such rulings by Civil Rule 77(m), the trial court lacked jurisdiction to redistribute the marital property. We disagree.

Whatever name Erick gave to his motion, the record indicates it was, in effect, a motion to alter or amend a judgment under Civil Rule 59(f).[2] This rule has no automatic denial provision. Consequently, the trial court was not without jurisdiction to amend its original findings.

The fact that the trial court may have treated the motion as one for reconsideration or even a new trial is irrelevant. We have repeatedly held that we may affirm a decision on different grounds from those advanced by the trial court whether or not those grounds appear in the record. *Foster v. Foster*, 684 P.2d 869, 872 n. 6 (Alaska 1984); *Native Village of Eyak v. G.C. Contractors*, 658 P.2d 756, 758 (Alaska 1983); *Carlson v. State*, 598 P.2d 969, 973 (Alaska 1979). Even if we determine "that the decision of the superior court was incorrect as a matter of law, we may nevertheless uphold that decision if there is any other ground which, as a matter of law, would support the result reached by the superior court." *Carlson*, 598 P.2d at 973. Here, the trial court had jurisdiction as a matter of law to alter or amend its finding. Debra's argument, therefore, must fail.

#### 2. *The Trial Court's Modifications*

In its original property division order, the trial court awarded Debra the Eagle River house and valued the Minnesota property at $28,500. The trial court's amendments awarded the Eagle River house to Erick and reassessed the value of the Minnesota property at $5,000. Debra contests both these determinations arguing that they are not supported by the evidence.

##### a. *The Eagle River House*

Debra argues that Erick should not have been awarded the Eagle River house because she received custody of the children and they need to "live in the best environ-

---

1. Erick was granted visitation rights of every Wednesday evening, every other weekend, every other holiday, and six consecutive weeks every summer. Erick does not appeal the visitation determination.

2. Civil Rule 59(f) provides:
 A motion to alter or amend the judgment shall be served not later than 10 days after the entry of judgment.

In regards to the identical Federal Rule, Professor Moore has stated:
 Any motion that draws into question the correctness of the judgment is functionally a motion under Civil Rule 59(e), whatever its label.
9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 204.12[1], at 4–67 (1987).

ment" and because Erick cannot afford to make the house payments. Apparently, Debra believes these considerations make the trial court's redistribution of the marital property inequitable.

The equitable distribution of property upon divorce rests within the broad discretion of the trial court and will not be disturbed on appeal unless clearly unjust. *Brooks v. Brooks,* 733 P.2d 1044, 1048 n. 3 (Alaska 1987); *Wanberg v. Wanberg,* 664 P.2d 568, 570 (Alaska 1983). Our review of the record reveals no indication that the trial court's amended property distribution is unjust.

 The Julsens' marital property was divided equally, each spouse receiving exactly 50% of the marital assets. We have repeatedly held that an equal division of property is presumptively valid. *E.g. Brooks,* 733 P.2d at 1058; *Brooks v. Brooks,* 677 P.2d 1230, 1235 (Alaska 1984) (Matthews, J., concurring). Moreover, the party seeking modification of the award bears the burden of showing the property division is clearly unjust. *E.g., Hurn v. Hurn,* 541 P.2d 360, 360 (Alaska 1975). Debra offers no valid or persuasive reason why the equal property division should be overturned. The trial court's determination on this issue is affirmed.

#### b. *The Minnesota Property*

The trial court originally valued the Minnesota property at $28,500. Subsequently, it revalued the property at $5,000 to "reflect that [Erick's] ownership is subject to a life estate." Debra contends that this determination is clearly erroneous because there were no documents produced at trial evidencing the existence of a life estate and no evidence at all to support the trial court's $5,000 valuation.

A trial court's valuation of marital property is a factual determination. *Brooks,* 733 P.2d at 1056; *Courtney v. Courtney,* 542 P.2d 164, 168 & n. 9 (Alaska 1975). Findings of fact made at trial will not be set aside on appeal unless they are clearly erroneous. Alaska R.Civ.P. 52(a); *Brooks,* 733 P.2d at 1051. A finding will not be set aside as clearly erroneous unless we have a

"definite and firm conviction" that a mistake has been made. *Id.* (quoting *Williams v. Alyeska Pipeline Service Co.,* 650 P.2d 343, 347 (Alaska 1982)).

 We hold no such conviction as to the trial court's finding the existence of a life estate. There is sufficient reliable evidence in the record to justify considering the life estate for purposes of valuing Erick's interest in the property.

 The actual value attached to this interest, however, is clearly erroneous. The property was acquired when the parties bought the mortgage on the property for approximately $20,000 to help out Erick's father who was in financial difficulties. In return, Erick's father deeded the land to the parties, subject to, as the court found, a life estate in the father. Except for the fact that the parties paid approximately $20,000 to buy the mortgage, and thus the reversionary interest in the Minnesota property, there was no evidence presented as to the value of the interest. While the price paid for the reversionary interest may not be probative, as the transaction was between family members, the value actually attached to Erick's interest appears to have been divined rather than deduced from the evidence. On remand, the trial court should elicit evidence relating to the value of the reversionary interest and value it in accordance with the evidence.

### B. *The Cross-Appeal*

#### 1. *Debra's Inheritance*

During the course of their marriage, Debra received a substantial inheritance from her mother. The trial court held that this inheritance was a non-marital asset and that no reason existed to justify its invasion.

Erick argues that Debra's inheritance should have been subject to distribution either because (1) the inheritance had been commingled and treated as joint assets; or (2) because his contributions to the marital community allowed Debra to keep her inheritance largely intact; or (3) because an

inheritance received during marriage constitutes "property acquired during coverture" within the meaning of AS 25.24.-160(a)(4) and, thus, must be deemed a marital asset as a matter of law.

■ The equitable division of property involves a three-step process. The trial court must determine what specific property is available for distribution, value that property, and determine the most equitable allocation. *E.g., Carlson v. Carlson,* 722 P.2d 222, 223–24 (Alaska 1986); *Wanberg,* 664 P.2d at 570. The appropriate property division rests within the broad discretion of the trial court and will not be disturbed on appeal unless clearly unjust. *E.g., Gabaig v. Gabaig,* 717 P.2d 835, 842 (Alaska 1986).

■ Here, we are concerned only with the first step of this process, i.e., the determination of what assets are available for distribution. AS 25.24.160(a)(4)[3] places all property acquired during the marriage, whether joint or separate, before the court for purposes of division. This statute also authorizes invasion of premarital holdings "when the balancing of the equities between the parties requires it." *Id.*[4]

■ Erick's first two arguments presume that an inheritance received during marriage is, or should be, treated as a premarital asset, but that the equities in this case require that it be invaded.

Recently, in *Brooks,* 733 P.2d at 1053, we reiterate the view that the equities support invasion of premarital assets under two general circumstances:

[F]irst, where the parties demonstrate their intent to treat premarital [assets] as joint property by both [spouses] taking an active interest in the ongoing maintenance, management, and control of the asset(s), *Burgess [v. Burgess],* 710 P.2d [417,] 432 [Alaska 1985]; *Wanberg,* 664 P.2d at 571, and, second, where one spouse's contribution to the marital community, pecuniary or otherwise, has benefited the other spouse's premarital property. *Vanover,* 496 P.2d at 648.

Erick argues that both of these general circumstances exist here. We disagree.

First, the record does not reflect an intention to hold the stocks jointly. Instead it shows that the stocks were placed in a joint account only "as an administrative convenience." Moreover, Debra had Erick's power of attorney giving her full authority over the account; Erick had no similar power. The only evidence of an intent to hold jointly, is the mere fact that the stocks were commingled in a joint account. However, as we recently observed, "the act of commingling, in itself, does not automatically establish intent to jointly hold property, and a court always should consider the property's source when determining what assets are available for distribution." *Carlson,* 722 P.2d at 224.

Second, although the inherited stocks were put into a joint account in 1982, and Erick had the authority to give directions

---

3. AS 25.24.160(a)(4) provides:

 In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide
 ....
 (4) for the division between the parties of their property, whether joint or separate, acquired only during coverture, in the manner as may be just, and without regard to which of the parties is in fault; however, the court, in making the division, may invade the property of either spouse acquired before marriage when the balancing of the equities between the parties requires it; and to accomplish this end the judgment may require that one or both of the parties assign, deliver, or convey any of their real or personal property to the other party;

4. Whether or not a particular piece of property is a marital or premarital asset "is in large part a legal determination, involving the interpretation of AS [25.24.160(4)], and applying legal principles to the facts of the case." *Wanberg,* 664 P.2d at 570. With respect to the legal analysis employed at the trial court level, review is based upon our independent judgment. *Id.* Whether or not the equities require invasion of premarital assets, on the other hand, lies within the broad discretion of the trial court and will not be overturned absent a clear abuse of discretion. *Id. See also Vanover v. Vanover,* 496 P.2d 644, 646–48 (Alaska 1972) and cases cited therein. To establish an abuse of discretion, the aggrieved party must show that the invasion or failure to invade was clearly unjust. *Vanover,* 496 P.2d at 645. *See also Wanberg,* 664 P.2d at 570 n. 9.

regarding the trading of the stocks, the record clearly shows that Erick took no *active* interest in the maintenance, management or control of the stocks. Erick admitted at trial that he did not give the stock broker any instructions concerning the account, nor could he identify a single transaction in which he had been involved.

There is also no real indication that Erick's contributions to the marital community allowed Debra to preserve her inheritance. In fact, the opposite appears to be true. The record indicates that Debra's inheritance allowed the parties to acquire substantial marital assets. Debra contributed over $78,000 of her inheritance directly into the marital estate. Moreover, it was the availability of Debra's inheritance that allowed the parties to acquire the mortgage on the Eagle River house, an asset that was awarded to Erick. Debra also worked throughout the course of the Julsen's thirteen year marriage, earning $20,000 to $30,000 annually.

■ Even assuming, *arguendo*, that Erick's contributions did benefit Debra's inheritance, it does not necessarily follow that invasion is required. Our prior cases do not hold, as Erick apparently assumes, that "benefit to separate property" mandates invasion. Rather, *Vanover* and its progeny merely indicate that where such circumstances exist, the trial court *may* in its discretion, determine that the equities require that all or part of the separate property be subject to distribution. *See Brooks,* 733 P.2d at 1053–54; *Burrell v. Burrell,* 537 P.2d 1, 3, 6 (Alaska 1975); *Vanover,* 496 P.2d at 648.

In the case at bar, the trial court specifically found that "no reason exists to justify invasion of [Debra's inheritance]." In light of the fact that Erick received over $225,000 in marital assets, is only 40 years old and earns over $50,000 a year, we perceive no abuse of discretion in the trial court's refusal to invade Debra's inheritance. Such a determination is not clearly unjust.

Erick's third argument is that an inheritance received during marriage constitutes, as a matter of law, a marital asset. Erick's argument essentially is that under the plain meaning of AS 25.24.160(a)(4)[5], any asset acquired during marriage by either spouse is a marital asset subject to distribution. Consequently, since Debra acquired her inheritance during the marriage, it must be deemed a marital asset.

Although we have had the issue of whether an inheritance received during marriage constitutes property acquired during marriage before us on several prior occasions, we have never actually decided the matter.[6]

Looking to other jurisdictions for guidance shows that a substantial majority of states deem inherited property to be the separate non-marital property of the inheriting spouse. *Hussey v. Hussey,* 280 S.C. 418, 312 S.E.2d 267, 270 (1984). By statute, twenty-one states and the District of Columbia either define inherited property as separate property or exclude it from the definition of marital property. *See* L. Golden, *Equitable Distribution of Property* § 5.20, at 113–14 (1983). *Accord,* Uniform Marital Property Act § 4, *reprinted in* 9A U.L.A. 29 (Supp.1986).[7] Other jurisdictions

---

5. *See supra* note 4.

6. In *Burrell,* 537 P.2d at 2–3, Homer had inherited a ¼ interest in a trust estate worth $1,167,000. The trial court held that the inheritance constituted a non-marital asset and declined to invade it in making the property division. *Id.* at 3. On review, we did not question the trial court's theory that the inheritance was to be classified as a non-marital asset, but held, on the assumption that the inheritance should be deemed property acquired before coverture, that "a just division of the property ... required invasion of [Homer] separate property, ... and the award of some portion of ... [it] to [Teresa]." *Id.* at 6 & n. 15 (footnotes omitted).

More recently in *Gabaig,* we intimated that property inherited during marriage should be treated as a non-marital asset, but since the point was not argued we had no occasion to rule on the matter. 717 P.2d at 842 & n. 17. In that case, we upheld the trial court's property division awarding Dorothy only one-third of the marital assets even though all the other factors indicated that a more equal division would be equitable. *Id.* Our rationale in *Gabaig* for upholding the husband's greater share was that "he inherited it." *Id.* at 843.

7. UMPA § 4(g)(1) provides in part:
Property acquired by a spouse during marriage ... is individual property if acquired:

have reached the same result by judicial decision. *See Bailey v. Bailey*, 250 Ga. 15, 295 S.E.2d 304, 305 (1982); *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832, 834 (1982); *Anderson v. Anderson*, 282 S.C. 162, 318 S.E.2d 566, 567 (1984); *Hussey*, 312 S.E.2d at 270. *See generally*, Golden, *supra* § 5.20, at 113–14; 1 J. McCahey, *Valuation and Distribution of Marital Property* § 18.05[4], at 18–72 to 18–75 (1986).

The policy considerations underlying this view have been stated as follows:

> The philosophy underlying equitable distribution is that marriage is a partnership and both spouses contribute, either directly or indirectly to the acquisition of property obtained during the marriage. If property is acquired without the joint efforts of the parties such property arguably should not be subject to division. For this reason, and because most inheritances are from family members and may have strong sentimental value, many states ... categorize inherited property as separate property.

Golden, *supra*, § 5.19, at 113 (footnote omitted). Other rationales variously identified include (a) tradition; (b) a belief that property which does not come into the marriage through the spouses' mutual efforts owes nothing to the marriage and is not intended to be shared; (c) the recognition that marital property is or should be only that property which arises from or to some extent is augmented by the efforts of the marital parties; and (d) the fact that inclusion of inherited property in the marital estate removes it from the natural line of succession, thus thwarting the intent of the person who acquired the property and passed it on to the inheriting spouse. *See Bailey*, 295 S.E.2d at 305; *Hussey*, 312 S.E.2d at 270.

◼ We find the majority rule and the policy considerations underlying it persuasive for several reasons. First, it is in line with our view of equitable distribution in general, which recognizes the partnership theory of marriage and considers the mutual effort and tangible contributions of the parties rather than the mere existence of the marital relationship. *See, e.g., Brooks*, 733 P.2d at 1053–54. Second, it accords the term acquired its ordinary and common meaning.[8] Therefore, we hold that for the purposes of equitable division, an inheritance received by one spouse[9] during marriage is not property acquired during coverture within the meaning of AS 25.24.160(a)(4), but constitutes a non-marital asset of the inheriting spouse. As such, an inheritance will not be subject to distribution unless a balancing of the equities requires it. Because the equities require no invasion here, the trial court's decision on this issue is affirmed.

## 2. *Child Custody*

Erick's second assertion of error is that the trial court based its decision to deny joint custody on inadequate findings.

◼ Child custody disputes are among the most difficult a trial court faces. *McDanold v. McDanold*, 718 P.2d 467, 468 (Alaska 1986). Trial courts are, therefore,

---

> (1) by gift or a disposition at death made by a third person to the spouse and not to both spouses.
>
> 9A U.L.A. at 29.

**8.** We have repeatedly stated that unless words have been given a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage. *E.g., Division of Elections v. Johnstone*, 669 P.2d 537, 539 (Alaska 1985); *Lynch v. McCann*, 478 P.2d 835, 837 (Alaska 1970). *See also* AS 01.10.040 ("words and phrases shall be construed according to ... their common and approved usage").

In this regard, *Black's Law Dictionary* 23 (5th ed. 1979) defines acquired as follows:

> To gain ... usually by one's own exertions; ... to obtain by search, endeavor, investment, practice or purchase, ...

Likewise, the *Random House College Dictionary* 13 (Rev. ed. 1984) defines acquired as "to gain oneself through one's actions or efforts." As commonly used, then, the word acquired presupposes some effort, endeavor or action in the acquisition of the property, and thus, does not include property, like inheritances, which are received gratuitously from a third party.

**9.** Property inherited by both spouses jointly, of course, constitutes marital property subject to division.

vested with broad discretion in determining where custody should be placed. *Id.* *See also, Craig v. McBride,* 639 P.2d 303, 304 (Alaska 1982); *Horutz v. Horutz,* 560 P.2d 397, 399 (Alaska 1977). Accordingly, we will reverse a trial court's resolution of a custody issue only if we are convinced that the record shows an abuse of discretion or if controlling factual findings are clearly erroneous. *E.g. McClain v. McClain,* 716 P.2d 381, 384 (Alaska 1986). An abuse of discretion may be found where the trial court considered improper factors, failed to consider statutorily-mandated factors, or improperly weighed certain factors in making its determination. *Id.*

We find none of the above circumstances present here. The trial court grounded its decision primarily on its finding that the Julsens could not cooperate "to the extent necessary to insure the success of joint custody." This finding is amply supported by the record.

In *McClain,* we stated that "[w]e think it apparent, ... that cooperation between parents is essential if [joint custody] is to be in the best interests of the child." 716 P.2d at 386. In *Smith v. Smith,* 673 P.2d 282, 283 (Alaska 1983), we upheld the trial court's rejection of joint custody based on its finding that the parties would not be able to cooperate. In light of *McClain* and *Smith,* we conclude that the trial court did not abuse its discretion in finding that joint custody was not in the Julsens' children's best interests.[10] The trial court's custody determination is affirmed.

## III. CONCLUSION

For the reasons discussed above, the trial court's valuation of the reversionary interest in the Minnesota property is RE-VERSED and REMANDED so that the trial court may elicit evidence as to this property's value. In all other respects, the trial court's judgment is AFFIRMED.

10. Although Judge Carlson may not have made express findings on all the statutory factors, the record reflects that he gave careful scrutiny to the issue and considered those factors pertinent to the case. Indeed, we do not believe custody

AFFIRMED in part, REVERSED in part, and REMANDED.

determinations should be overturned merely because a judge fails to tally the statutory factors like runs, hits and errors in a box score. In our opinion, the trial court made a sound decision and no reason exists at this time to overturn it.