Frances Lewis MATSON, Appellant,

v.

Lloyd L. LEWIS, Appellee.

No. S–1974.

Supreme Court of Alaska.

June 17, 1988.

Arona S. Blachman, Anchorage, for appellant.

J. Randall Luffberry, Palmer, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

Frances Matson and Lloyd Lewis were married on December 30, 1978. The parties permanently separated in May of 1985. This appeal concerns the trial court's division of the parties' property pursuant to the divorce decree.

## DISCUSSION

### I. DID THE TRIAL COURT CLEARLY ERR IN HOLDING THAT THE NIKISHKA BAY PROPERTY WAS MARITAL PROPERTY?

In 1975, prior to her marriage to Lewis, Matson received title to a lot in the Nikishka Bay Woods Subdivision in North Kenai. Matson received this property as part of a divorce settlement with her previous husband.

In April 1976, Matson quitclaimed the Nikishka property to her daughter. Matson testified that the purpose of this transfer was to protect the property from her former husband's children and others who might have an interest in the property. She claimed that the daughter never considered herself the owner of the property.

In 1979, Matson's daughter transferred the property to Matson and Lewis jointly. Matson testified that the title was only placed in Lewis' name so that he could act as caretaker and divide the property among Matson's children in the event of Matson's death. Matson claimed she explained this to Lewis and that she never intended for Lewis to have control of the property. Lewis, on the other hand, testified that Matson never discussed with him that he act only as a caretaker of the Nikishka property.

When the parties separated in 1982, Lewis quitclaimed his interest in the Nikishka property to Matson. The parties, however, subsequently reconciled, and the quitclaim deed was not recorded. When the parties separated again in 1985, Matson recorded the 1982 quitclaim deed.

The trial court held that the Nikishka property should be treated as marital property. Specifically, the trial court found that the property was transmuted from a pre-marital asset of Matson to marital property and should therefore be distributed without credit for pre-marital value.

■ We find that the trial court clearly erred in concluding that the Nikishka property was marital property which was subject to division.[1] The 1982 transfer plainly reflected Lewis' belief that the property was the separate property of Matson, despite the fact that his name had been on the deed. He has offered no other explanation. Our conclusion is strengthened by the fact that Lewis had almost no contact with the property and by its non-marital origin.[2]

---

1. "Findings of fact made at trial may not be set aside on appeal unless they are clearly erroneous. A finding may not be set aside as clearly erroneous unless the reviewing court has a definite and firm conviction that a mistake has been made." *Williams v. Alyeska Pipeline Serv. Co.,* 650 P.2d 343, 347 (Alaska 1982) (footnote omitted).

2. A balancing of the equities does not require that the Nikishka property be considered a non-marital asset subject to division. In *Brooks v.* *Brooks,* 733 P.2d 1044, 1053 (Alaska 1987), we discussed two general circumstances where the equities support an invasion of a spouse's pre-marital property. The first is where the parties demonstrate their intent to treat pre-marital property as joint property by both spouses taking an active interest in the management and control of the asset. The second is where the non-owning spouse's contributions to the marital community benefit the other spouse's pre-marital property. Neither of these situations is present in this case. Lewis never exercised any

## II. DID THE TRIAL COURT CLEARLY ERR IN CONCLUDING THAT THE BAYSHORE PROPERTY WAS ENTIRELY MARITAL PROPERTY AND SHOULD BE DISTRIBUTED WITHOUT CREDIT FOR THE VALUE OF THE PRE–MARITAL PROPERTY DOWN PAYMENT?

During their marriage, the parties purchased two unimproved lots in Homer in the Bayshore Subdivision. The purchase price for both these lots was $34,000. Matson used her pre-marital salmon setnet permit for the down payment on the property of $15,000. The remainder of the purchase price was to be paid in the form of monthly payments made from marital assets. Title to the Bayshore property was taken jointly by the parties.

The trial court found that the Bayshore lots were entirely marital property and should be distributed without credit for the pre-marital value of the fishing permit. The court found that taking title jointly after discussing the permit and using it as the down payment for the property evidenced the parties' intent to convert the pre-marital fish permit into marital property.

 Matson argues that because her separate property provided 44% of the purchase price, she is entitled to be credited with 44% of the equity in the property prior to its division between the parties. We disagree.

In *Carlson v. Carlson*, 722 P.2d 222, 224 (Alaska 1986), we held that the act of commingling assets does not automatically establish the intent to jointly hold property. We stated that the property's source should always be considered when determining what assets are available for distribution. *Id.* Nonetheless, we decided that although the husband's separate property was used as a down payment to purchase a four-plex, the fact that the wife lived in one of the units and assisted in the management and maintenance of the property com-

pelled the conclusion that the trial court's finding that the parties intended to jointly hold the property was not clearly erroneous. *Id.* at 224–25.

We reach a similar conclusion in this case. While Matson's separate property was used for the down payment, the evidence indicates that the parties jointly decided to purchase the property. In addition, the parties' title was taken jointly and monthly payments were made from marital assets. Under these circumstances, we find the trial court's conclusion that the parties intended to treat the Bayshore lots as entirely marital property was not clearly erroneous.

## III. DID THE TRIAL COURT CLEARLY ERR IN VALUING THE MARITAL PORTIONS OF LEWIS' PENSION?

Lewis, as a result of employment both prior to and during his marriage to Matson, is entitled to certain pension benefits. At the time of trial these benefits amounted to a payment of $713.05 per month. The parties agree that a portion of this pension constitutes a marital asset. The parties disagree, however, on the value of the pension.

At trial, Matson's expert testified as to the value of the marital portion of the pension. The expert calculated the value by estimating the future stream of payments that would be received from the pension based upon Lewis' life expectancy. This stream of payments was then reduced to present value using an expected rate of return. In order to arrive at the marital portion of the benefits, the present value was multiplied by the ratio of the hours worked in earning the benefits which occurred during Lewis' marriage to Matson to the total number of hours he worked earning the benefits.

Using this method, Matson's expert valued the marital portion of the pension between $83,837.49 (using a 5% expected rate of return) to $66,147.79 (using an 8% ex-

interest in the management or control of the Nikishka property. The only contacts he had with the property were on drive-by visits on two occasions. While approximately $600 of mari-

tal assets was used to pay taxes on the property, this was not a contribution which resulted in the active appreciation of the property. *See id.* at 1054.

pected rate of return). Lewis objected to the use of the low interest rates utilized by Matson's expert. During cross-examination of Matson's expert, Lewis elicited testimony that if a lump sum were invested in real estate and then that real estate were sold on time, it would not be unreasonable to earn an interest rate of at least 9% on such a transaction. During closing argument, Lewis argued that the appropriate discount rate should have been approximately 14%, and that using this rate the marital portion of the pension would be valued at $44,504. Lewis, however, offered no evidence that this 14% discount rate was reasonable.

The trial court's finding as to the marital value of the pension is as follows:

> Now, given your ex—given the defendant's expert, if the court were to take away those hours, we would be looking at a figure, based on his testimony, in the $75,000 range, somewhere in there. The defendant is arguing for a figure in the $45,000 range. The court's going to more or less split the difference and declare that the value of the pension, which, admittedly, I think we all think we're an Alice in Wonderland sometimes when we're talking about pension evaluations, is about $60,000. So I'm going to declare that that's the value of his pension, $60,000.

 We find the trial court's ruling to be clearly erroneous. Lewis argues that the $60,000 value equates to a discount rate of approximately 10%, and that therefore, after listening to all the testimony, the court felt a 10% interest rate was fair. The record does not support such a conclusion. The trial court's ruling reflects the fact that the trial court arrived at the valuation by averaging the estimates of Matson's expert with the estimate given by Lewis in argument, which was unsupported by any evidence. The trial court did not conclude that any particular discount rate was appropriate. We remand this question to the trial court to arrive at a valuation in a manner which is supported by the record.[3]

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.

---

**3.** Matson raised several additional issues on appeal. We have reviewed each of these issues and find the trial court committed no error.