Andrew Morten CHOTINER, Appellant,

v.

Jennifer Lynn CHOTINER, Appellee.

No. S–4219.

Supreme Court of Alaska.

April 3, 1992.

Rehearing Denied April 30, 1992.

William T. Ford, Anchorage, for appellant.

Timothy M. Lynch, David T. Mulholland, Law Offices of Timothy M. Lynch, P.C., Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

In this divorce case, Andrew Chotiner appeals the superior court's division of property and award of attorney's fees. The primary dispute is whether the court erred in treating an annuity worth some $100,000 as marital property rather than as the separate property of Andrew. We reverse, for the reasons that follow.

Andrew and Jennifer Chotiner were married on November 1, 1974. Two children were born of the marriage. Andrew filed for divorce on October 19, 1988, and the decree of divorce was granted on September 5, 1990. At the time of trial, Jennifer was forty-three years old, five years younger than Andrew. She was regularly employed by the Anchorage School District as a teacher and earned over $40,000 per year. Andrew was also employed by the School District, as a safety-security coordinator, earning about $30,000 a year.

The trial court granted Jennifer custody of the children. As for the distribution of property, the court found that all of the parties' property was subject to division and that it had a net worth of approximately $237,000, of which Jennifer should receive net assets of approximately $120,000 and Andrew net assets of approximately $117,000.[1]

---

1. The distribution of assets was set out in tabular form in the decree as follows:

| ITEM | PLAINTIFF | DEFENDANT |
|---|---|---|
| Residence | | $113,000 |
| 1983 Subaru | | $ 3,000 |
| Remaining funds in NBA account | | $ 20,187 |
| Teachers Retirement (TRS) | | $ 9,767 |
| USAA Mutual Growth Fund | $ 1,486 | |
| Personal Property | $ 2,261 | $ 2,868 |
| PERS | $ 12,152 | |
| Annuity | $ 99,734 | |
| Alaska USA 72698 (S1) | $ 1,115 | |
| Alaska USA 72698 (S7) | $ 335 | |
| Alaska USA 386887 (S7) | | |
| SUBTOTAL | $117,083 | $148,822 |
| Debts on Residence | | −28,817 |
| (Mortgage and Home Equity Loan) | | |
| NET: | $117,083 | $120,005 |

Andrew challenges this division on appeal, contending that the $100,000 annuity which he received as part of his distribution should have been found to be separate property. Andrew makes the same contention with respect to a mutual fund worth about $1,500. Andrew raises a number of other distributional issues and also contends that the court's award of $3,100 in attorney's fees and costs to Jennifer was an abuse of discretion.

Dividing property between divorcing spouses is largely committed to the discretion of the trial court. *Doyle v. Doyle*, 815 P.2d 366, 368 (Alaska 1991). There is, however, a process incorporating a number of statutory and common law principles which should be followed.[2] We have expressed the process as involving three steps:

> First, the trial court must determine what specific property is available for distribution. Second, the court must find the value of this property. Third, it must decide how an allocation can be made most equitably.

*Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983); *Doyle*, 815 P.2d at 368.

 In the first step, determining what property is available for distribution, the court is to identify what marital property, as distinct from separate property, exists at the distribution date. *Wanberg*, 664

P.2d at 571. Because separate property may be invaded in making a property division when equitably required, the division of property actually involves more than three steps. The court must determine what marital property is available for distribution, value that property, and make an equitable division if possible. If an equitable distribution is not possible, the court turns to the parties' separate property. At that point, the court is addressing the question of whether the balance of the equities between the parties requires that separate property be invaded. If invasion is required, the court should determine what separate property the parties own, value it, and adjust the initial distribution as needed. If invasion is not required, the initial division of marital property becomes the final result.

### A. *The Annuity*

The annuity was a single premium annuity purchased by Andrew on July 11, 1977, for $30,000. Andrew was both the annuitant and the owner of the annuity. Jennifer was a beneficiary. Andrew claims that the funds used to purchase the annuity were separate property, that he never intended to donate the funds to the marital estate, and that he likewise never intended to donate the annuity to the marital estate. Jennifer contends that the annuity was

**2.** The statutory principles are expressed in AS 25.24.160(a)(4):

(a) In a judgment in an action for divorce ... the court may provide

....

(4) for the division between the parties of their property, including retirement benefits, whether joint or separate, acquired only during marriage, in a just manner and without regard to which of the parties is in fault; however, the court, in making the division, may invade the property, including retirement benefits, of either spouse acquired before marriage when the balancing of the equities between the parties requires it; ... the division of property must fairly allocate the economic effect of divorce by being based on consideration of the following factors:

(A) the length of the marriage and station in life of the parties during the marriage;

(B) the age and health of the parties;

(C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;

(D) the financial condition of the parties, including the availability and cost of health insurance;

(E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;

(F) the desirability of awarding the family home, or the right to live in it for a reasonable period of time, to the party who has primary physical custody of children;

(G) the circumstances and necessities of each party;

(H) the time and manner of acquisition of the property in question; and

(I) the income-producing capacity of the property and the value of the property at the time of division.

marital because the parties agreed that it was a joint investment and because part of the funds used to purchase the annuity were marital. Even if separate, she argues that the annuity had to be invaded to achieve an equitable property division.

Funds from a savings account at Alaska USA Federal Credit Union were used to purchase the annuity. Andrew had opened the Alaska USA account prior to the marriage. In June of 1976, Jennifer's name was added to the account. Andrew testified that Jennifer's name was put on the account "if it was necessary to use it" but that she did not participate in the account until it was converted into a joint checking account at the end of 1977. At the time the annuity was purchased, the account consisted of funds deposited only by Andrew, including inheritance money and $15,500 in military severance pay.

### 1. Military Severance Pay

■ The court found that the annuity was a marital asset. Part of the basis for this was the court's finding that the money[3] Andrew received at the termination of his military career was a marital asset. This conclusion was in large part erroneous. In May of 1976, Andrew was discharged from the Air Force after twelve years of service. Military separation payments are governed by 10 U.S.C. § 687. The formula for their calculation is years of service multiplied by monthly basic pay multiplied by two (with various limits which are not applicable here). These payments were part of Andrew's compensation package. They are analogous to retirement pay which is marital property only to the extent that it is attributable to work performed during the marriage. *Doyle v. Doyle*, 815 P.2d 366, 370 (Alaska 1991). In this case, Andrew earned almost eighty-seven percent (122 of 141 months in the

service) while single. Thus $13,484 of the $15,584 payment should have been considered to be separate property, unless Andrew conveyed it to the marital estate.

### 2. Inherited Funds

The other major source of funds in the account used to pay for the annuity was Andrew's inheritance. The trial court concluded that the $23,719 inheritance "must be invaded by the court and distributed as a marital asset so as to provide an equitable distribution between the parties." The court reasoned that "[i]t would constitute an abuse of discretion to give to Andrew an asset which was protected by the income producing activities of Jennifer and by the use of other marital assets ... in failed investments."

The court's reasoning is mistaken. It treats the inheritance Andrew received as an asset available for distribution at the time of the divorce. However, in 1990 the inheritance money had been spent. The relevant question was whether the inherited funds used to purchase the annuity in 1977 were marital property then.

■ Inherited property is separate, even if received during marriage. *Julsen v. Julsen*, 741 P.2d 642, 648 (Alaska 1987). However, through various means, inherited property, like other separate property, may be conveyed to the marital estate. Whether such a conveyance occurred in this case is, as we discuss below, an unresolved question.

### 3. Conveyance to the Marital Estate

■ Separate property can become marital property where that is the intent of the owner and there is an act or acts which demonstrate that intent.[4] For example,

---

**3.** In its findings, the court refers to the "$15,000 readjustment pay." According to the record, Andrew actually received $15,584.58. Andrew testified that the additional $584 represented residual money from a pay or leave account.

**4.** Where there is no intent on the part of the owner, separate property can nonetheless be invaded when required for equitable purposes.

*Burgess v. Burgess*, 710 P.2d 417, 420 n. 3 (Alaska 1985). This, however, is a discretionary step. (The court must take into account marital property while it may invade separate property.) Whether to invade separate property is thus analytically different from deciding whether property is marital or separate.

separate real estate can become marital where the owner permits the non-owner spouse to lend her credit to improve the property, or to devote substantial efforts to its management, maintenance or improvement, or where the parties use the premises as their personal residence.[5] *Wanberg*, 664 P.2d at 572; *Burgess*, 710 P.2d at 420. Similarly, placing separate property in joint ownership is rebuttable evidence that the owner intended the property to be marital. *Lewis v. Lewis*, 785 P.2d 550, 555 (Alaska 1990); *cf. Matson v. Lewis*, 755 P.2d 1126, 1127 (Alaska 1988) (intent rebutted where owner of separate property consented to joint ownership for convenience in case of her death; spouse acknowledged that property was separate by conveying it back to owner prior to divorce); *Julsen*, 741 P.2d at 646–7 (intent rebutted where inherited stock placed in joint trading account only "as an administrative convenience"; non-owner spouse did not participate in the account). Likewise, agreements oral or written, may demonstrate the owner's intent, or lack of intent, to convert separate property to marital property. *Rosson v. Rosson*, 635 P.2d 469, 471 (Alaska 1981); *Matson*, 755 P.2d at 1128; *Brooks v. Brooks*, 733 P.2d 1044, 1053–54 (Alaska 1987).

■ The trial court did not address the question whether Andrew intended to transfer his separate funds to the marital estate before he purchased the annuity. If the funds were marital when the annuity was purchased it follows that the annuity is marital despite the fact that the sole legal owner was Andrew.

The trial court did conclude that "there is no evidence that the parties intended to treat [the annuity] as being solely for the benefit of one to the exclusion of the other." If this means that there was no evidence that Andrew intended the annuity to be separate property, it is inaccurate. Andrew testified that "[t]here was never an

intent on my part for [the annuity] to be hers."

A remand is necessary so that the court may determine whether Andrew intended to transfer the funds used to purchase the annuity, or the annuity itself, to the marital estate. As the evidence on both these points is sparse as well as conflicting, the court, in its discretion, may take additional evidence. In this as in all cases, we ask for " 'sufficiently detailed and explicit findings to give [this] court a clear understanding of the basis of the trial court's decision.' " *Lewis*, 785 P.2d at 552 (quoting *Merrill v. Merrill*, 368 P.2d 546, 547–48 (Alaska 1962)).

### 4. Invasion of the Annuity if it is Separate Property

■ Jennifer suggests that even if the annuity is Andrew's separate property, the court properly exercised its discretion and invaded it. The court's conclusion that invasion of the "inheritance" was warranted, rested primarily on two findings. The first was that the parties made many joint investments resulting in substantial losses. The court seems to suggest that because the parties made bad joint investments, Andrew must sacrifice his separate property. We see no reason why this should be so. The second finding used to justify invasion was that Andrew had decided to forgo lucrative employment for a job that paid minimum wages, forcing Jennifer to become the primary wage earner for two years. Though Jennifer's financial contributions to the marriage were significant, they do not make Andrew's separate property marital. Such a result would mean that a non-working spouse would never be able to keep his or her inherited property separate.

■ Jennifer argues that invasion was warranted because in 1988 the parties paid $10,000 from marital funds to a bank so that the bank would non-judicially rather than judicially foreclose a four-plex which

---

5. However, in *Carlson v. Carlson*, 722 P.2d 222, 224 (Alaska 1986), the fact that the parties resided in the husband's farmhouse for a short time after marriage, when some refinishing work was done, was held insufficient to demonstrate an intent to treat the property as marital.

had drastically declined in value. A judicial foreclosure would have resulted in a large deficiency judgment against the parties. Collection of the judgment could have involved levies not only on the annuity, but on all their assets and salaries. Thus, the $10,000 payment to the bank is insufficiently related to the annuity to serve as a reason for invasion.

Our review of the record demonstrates no reason why invasion of the annuity,[6] if it is separate property, might be required in this case.

### B. *Additional Distribution Issues*

#### 1. The Mutual Fund

In 1973, Andrew purchased 40.65 shares of USAA Capital Growth Fund for $500. The stock earned dividends which were reinvested in additional stock. By January 1989, the account held 105.871 shares worth $1,486.42.

The trial court concluded that the shares "should be distributed as a marital asset." It is unclear from the conclusions of law whether the court found that the mutual fund was marital property, or separate property warranting invasion. However, the conclusion cannot be justified under either theory.

The mutual fund was acquired by Andrew with separate funds before the marriage. It remained in his name throughout the marriage. No additions were made to it from marital funds. It paid dividends during the marriage, but these were reinvested and did not become marital property.[7] There is no evidence that Andrew intended to treat the mutual fund as marital property. Thus any finding that it was marital property would be clearly erroneous.

Assuming that the court meant to treat the mutual fund as separate property which should be invaded, the court abused its discretion. As discussed above concerning the annuity, we are unable to perceive of any reason why invasion would be warranted in this case.

#### 2. Alaska USA Account

In its property distribution, the court awarded Andrew the Alaska USA accounts, valued at $1,450. Review of the record demonstrates that Jennifer had emptied the Alaska USA accounts prior to trial and that they were actually worth nothing. It was error to place a value on them.

#### 3. Valuation of Jennifer's Pension Fund

The record reveals that the court assessed Andrew's retirement account as of August 1988 but adopted the June 1986 value of Jennifer's comparable account. The fact that the valuation of Andrew's account reflects two additional years of interest absent from Jennifer's account results in a relative under-valuation of the latter.

#### 4. Marital Debts

In its findings, the court acknowledged that the parties owe an outstanding bill of $2,080 on one of their joint investments, the Williwa IV Apartments. However, the court failed to indicate who should pay the debt. On remand this point should be clarified.

#### 5. Failure to Credit Andrew for $10,000 Down Payment on Family Home

In 1974, the parties purchased a home as joint tenants. The home was

---

**6.** We note that the annuity was a completely passive investment. Only forbearance was required to preserve it. This case is thus distinguishable from *Vanover v. Vanover,* 496 P.2d 644, 647 (Alaska 1972), where the husband's separate real estate was invaded in part "because [the wife's] efforts helped to save [the

property]" apparently by contributing to marital income from which taxes on the separate property were paid for some fifteen years.

**7.** "We have never held that a non-titled spouse is entitled to share in the passive appreciation of separate property." *Brooks,* 733 P.2d at 1054.

clearly marital property. Andrew paid $10,000 as a down payment from his separate funds. He contends that the court should have ordered reimbursement for this payment from the marital estate.

We have recognized that one of the factors which may be relevant to a particular division of property is "[a] spouse's contribution of substantial separate property to the marriage." *Laing v. Laing,* 741 P.2d 649, 654 (Alaska 1987); *see also Wanberg,* 664 P.2d at 572 (less than equal share may be granted where property was originally separate property of other spouse).[8] However, we have not held that failing to make such an adjustment is an abuse of discretion. *See Matson,* 755 P.2d at 1128; *Moffitt v. Moffitt,* 749 P.2d 343, 347 (Alaska 1988). On the record before us we are unable to conclude that the court abused its discretion in failing to recognize the separate property contribution of Andrew. Such recognition, however, remains an option open to the court on remand.[9]

### C. *Attorney's Fees and Costs*

██ The court awarded Jennifer $3,100 in attorney's fees and costs without explanation. Since the court recognized that both parties have comparable economic situations, the award was not called for unless Andrew acted in bad faith or was guilty of vexatious conduct. *Mann v. Mann,* 778 P.2d 590, 592 (Alaska 1989); *Horton v. Hansen,* 722 P.2d 211, 218 (Alaska 1986). Before an award may be made for misconduct, the court "must make explicit findings of bad faith or vexatious conduct." *Kowalski v. Kowalski,* 806 P.2d 1368, 1373 (Alaska 1991). Further, if the court concludes that the misconduct increased the costs of litigation, it must "identify the nature and amount of these increased costs." *Id.* (citing *Richmond v. Richmond,* 779 P.2d 1211, 1217 (Alaska 1989); *Jones v. Jones,* 666 P.2d 1031, 1035

(Alaska 1983)). Since the court failed to make any findings regarding the award of fees and costs, the award must be reversed.

For the reasons discussed above, the superior court's property distribution and award of attorney's fees and costs are REVERSED. This case is REMANDED for further proceedings consistent with this opinion.

RABINOWITZ, Chief Justice, dissenting in part.

I disagree with the majority's holding that the superior court abused its discretion in invading the annuity and distributing it as a marital asset. This court has held that "[w]hether or not the equities require invasion of premarital assets ... lies within the broad discretion of the trial court and will not be overturned absent a clear abuse of discretion." *Julsen v. Julsen,* 741 P.2d 642, 647 n. 4 (Alaska 1987) (citing *Wanberg v. Wanberg,* 664 P.2d 568, 570 (Alaska 1983)). The superior court's findings are not clearly erroneous and support its conclusions that the parties' marital assets were used to protect the annuity and that the annuity should be treated as marital property.

In regard to this issue, the superior court made the following relevant findings of fact and conclusions of law:

The Guaranteed Security Life Insurance Company annuity is a marital asset and should be distributed as such. The funds for its acquisition cannot be distinguished as being from any pre-marital funds which are not subject to division. There is no evidence that the parties intended to treat this asset as being solely for the benefit of one to the exclusion of the other. Finally, the asset was protected and preserved by the expenditure of other substantial marital assets and

8. *Miles v. Miles,* 816 P.2d 129, 132 (Alaska 1991), may also be explained under this rationale, although there we referred to the down payment as retaining its pre-marital character.

9. Andrew sets out other claims of error which we find to be clearly without merit.

the income producing activities of both parties.

The inheritance of $23,719.58 is a premarital asset. However, it must be invaded by the court and distributed as a marital asset so as to provide an equitable distribution between the parties. *Julsen v. Julsen*, 741 P.2d 642, 648 (Alaska 1987). It would constitute an abuse of discretion to give to Andrew an asset which was protected by the income producing activities of Jennifer and by the use of other marital assets in the above-referenced failed investments.

Jennifer's domestic efforts and the direct financial contributions resulting from employment outside the home have economic value. The parties' [sic] were able to preserve the annuity by living frugally using the income from both salaries and by financing investments and losses through their combined incomes and other savings.

In 1986 or 1987, the parties became concerned about the possibility of a judicial foreclosure on the Sharon Street four-plex. They negotiated with the bank for a loan forgiveness. Andrew specifically instructed Jennifer not to inform the bank of the existence of the annuity because he was afraid the bank would not agree to a loan forgiveness if they knew that the parties had such a substantial, highly liquid asset. The bank agreed to accept $10,000 from the parties joint savings in consideration for the loan forgiveness.

In *Vanover v. Vanover*, 496 P.2d 644, 648 (Alaska 1972), we held that the equities support the invasion of premarital assets where one spouse's contribution to the marital community, pecuniary or otherwise, has benefited the other spouse's premarital property. In this regard we said:

> We believe that a balancing of the equities required that the trial court invade the separate property of Harold which he had acquired prior to his marriage to Gladys. From the record it is apparent that the homestead lands to which Harold had managed to obtain a patent prior to his marriage had greatly appreciated in value during the 15 years that he was married to Gladys. In part through the efforts of Gladys, by virtue of her working for eight years during their 15-year marriage and her contributions toward payment of family expenses and taxes, Harold was able to retain most of the homestead lands he had brought into their marriage.

*Id.* at 647.

In the instant case, as in *Vanover*, I believe that the equities require the invasion of the annuity because the annuity was protected by the parties' marital assets, including Jennifer's salary. Thus, I would hold that the superior court did not abuse its discretion in invading the annuity after concluding that the annuity was "protected and preserved by the expenditure of other substantial marital assets and the income producing activities of both parties."