Michael M. **BELLANICH**, Appellant,

v.

Barbara Y. **BELLANICH**, Appellee.

No. S–7021.

Supreme Court of Alaska.

April 18, 1997.

C. Keith Stump, Ketchikan, for Appellant.

Dennis L. McCarty, Clifford H. Smith, P.C., Ketchikan, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

OPINION

MATTHEWS, Justice.

## I. INTRODUCTION

A husband appeals the superior court's property division in a divorce case.

## II. FACTS AND PROCEEDINGS

Michael and Barbara Bellanich, both Ketchikan residents, were married in 1954. They had five children. They divorced in 1959 but remarried after four or five months. Barbara filed for divorce on March 17, 1994. The end of the marriage and the divorce were acrimonious.

The parties acquired eight pieces of real estate during the marriage. Of these eight pieces of property, two were given or sold to individual children. Michael's parents' former home was sold to the parties' son Mike Jr., and Lot 3 and part of Lot 1A were gifted to the parties' daughter Tami. The remaining six pieces of property were subjected to distribution by the superior court.[1]

In making its property distribution, the superior court held that, given the almost forty-year marriage between the parties, all of the property involved was part of the marital estate. The court explicitly ignored testimony by Michael relating to recent or intended transfers of his interest in some of the property to the children.

The court awarded Barbara personal property and debts which it valued at $40,215. It awarded Michael personal property and debts valued at $28,330. It awarded Barbara three pieces of property—17 Shoup, the Waterfront Lot, and a unitary parcel consisting of Lot 4 and half of Lot 5—with a value of $206,800. It awarded Michael the remaining three parcels—54 Shoup, Shangri-La, and the half-interest in the Pennock Island Lot—with a value of $328,300.

The court reasoned that because Barbara had been awarded $11,885 worth of personal property more than Michael, and Michael had been awarded $121,500 worth of real property more than Barbara, then there existed in the division an "overall disparity" of

1. One of the properties, a lot on Pennock Island, had been given to Michael and his brother, so that only a one-half interest was subject to distribution. The propriety of this distribution is one of the issues in this appeal.

$109,615 in Michael's favor. The court wrote:

> The best way to cure the inequity stemming from the unbalanced property division is to award [Barbara] a mortgage against the "Shangri–La" parcel in the amount of $109,615.00. The mortgage will require a liquidation schedule of 20 years at 10.5% with the initial monthly payment due January 10, 1996.

Michael challenges the superior court's ordered mortgage arrangement, the designation of certain real property as martial property, the division of the real property, and the court's valuation of certain items of personal property.

## III. STANDARD OF REVIEW

■ In dividing property in a divorce case, the superior court undertakes a three-step process: (1) determining what property is available for distribution; (2) valuing the property; and (3) determining the most equitable allocation. *Wanberg v. Wanberg,* 664 P.2d 568, 570 (Alaska 1983).

■ Determining what property is available for distribution may involve both legal and factual questions. Legal questions decided by a subordinate court are reviewed *de novo;* we "adopt the rule of law that is most persuasive in light of precedent, reason and policy." *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979). Factual determinations made by a trial court may be set aside only if clearly erroneous. Alaska R.Civ.P. 52(a). The valuation of property is a factual determination. *Cox v. Cox,* 882 P.2d 909, 913–14 (Alaska 1994). This court reviews a trial court's allocation of property under the abuse of discretion standard, and will reverse a trial court's determination only if it is clearly unjust. *Compton v. Compton,* 902 P.2d 805, 808 n. 2 (Alaska 1995). The trial court has

broad discretion in fashioning a property division. *Cox,* 882 P.2d at 913.

## IV. DISCUSSION

### A. The Mortgage Arrangement

#### 1. The amount of the mortgage debt

■ Michael points out that, by awarding Barbara a mortgage in the same amount as the apparent inequity in the parties' respective awards, the court has served only to reverse the disparity rather than to eliminate it. In other words, instead of giving a mortgage to Barbara in the amount of $109,615, the court should have awarded Barbara one-half of that amount, or $54,807.50. As it stands, the distribution would create an inequity of $109,615 in Barbara's favor. Michael's argument has obvious merit.

Barbara in response argues that there is evidence in the record to support the award in her favor. However, the superior court was clearly trying to divide the property equally.[2] It wrote in its memorandum of decision: "The Court's goal is to equalize the division between the parties." And further: "The best way to cure the inequity stemming from the unbalanced property division is to award the plaintiff a mortgage...." Barbara's task is not to justify an award in her favor, but to show that the court meant, despite its language to the contrary, to make a property award weighted unequally in her favor. She cannot do this.[3]

The court's order must be reversed and remanded on this issue.

#### 2. The propriety of the interest rate on the mortgage debt

■ Michael argues that the award of a twenty-year mortgage to Barbara at 10.5% creates an "unwarranted windfall" to Barbara since she would not be able to realize that rate of return on a similarly secure

**2.** Such an equal division is presumptively valid under *Brooks v. Brooks,* 733 P.2d 1044, 1058 (Alaska 1987).

**3.** Barbara correctly points out the Civil Rule 60(b)(1) is available to a party to obtain relief from a judgment on the grounds of mistake. But she does not claim that Rule 60(b) was Michael's exclusive remedy or that he should somehow be

barred from appealing because he did not pursue a Rule 60(b) motion. She only implies that Michael appealed rather than using Rule 60(b) because the superior court actually meant to create an award in her favor. This implication is directly contrary to the superior court's explicitly stated goal of "equaliz[ing] the division between the parties."

investment. He also notes that, if he wanted to pay off the debt early, he would have to sell the property and renege on an understanding through which the parties' daughter Jody occupies the "Shangri–La" property.

Michael has not demonstrated an abuse of discretion by these arguments. He has not demonstrated that the 10.5% rate is unusually high or is out of line with current interest rates on similar obligations.

### B. The Pennock Island Property

The trial court found without elaboration that all of the real property held by the parties was marital property. Michael argues that the Pennock Island property was separate property because it was given by his parents to him.

 Property which is inherited is the separate property of the recipient, even if the property is received when the recipient is married. *Lundquist v. Lundquist,* 923 P.2d 42 (Alaska 1996); *Chotiner v. Chotiner,* 829 P.2d 829 (Alaska 1992); *Julsen v. Julsen,* 741 P.2d 642, (Alaska 1987). We explained the policy underlying this rule in *Julsen,* 741 P.2d at 648:

> The philosophy underlying equitable distribution is that marriage is a partnership and both spouses contribute, either directly or indirectly, to the acquisition of property obtained during the marriage. If property is acquired without the joint efforts of the parties such property arguably should not be subject to division. For this reason, and because most inheritances are from family members and may have strong sentimental value, many states ... categorize inherited property as separate property.

(Quoting L. Golden, *Equitable Distribution of Property* § 5.19 at 113 (1983)). As this rationale also applies to property that is conveyed by gift, we conclude that property which is given to one spouse alone is also separate property.[4]

 Separate property can be transmuted into marital property "where that is the intent of the owner and there is an act or acts which demonstrate that intent." *Chotiner,* 829 P.2d at 832; *Cox v. Cox,* 882 P.2d 909 (Alaska 1994); *Rhodes v. Rhodes,* 867 P.2d 802 (Alaska 1994). As the court made no findings as to the intent of Michael or the existence of any acts of transmutation, the court's treatment of the Pennock Island property as marital must be vacated.

### C. Other Property Given by Michael's Parents

 A number of other parcels were given to Michael by his parents. He admits that these parcels have become marital but argues that the trial court should have taken into account the source of this property in making the property division.

Alaska Statute 25.24.160(a)(4)(H) specifies that "the time and manner of acquisition of the property in question" is a factor to be considered in dividing marital property. The trial court's memorandum of decision does not indicate that this factor was taken into consideration.[5] We have ruled that a factor listed in AS 25.24.160(a)(4) should be adverted to by the trial court in dividing the property of the parties where the factor is relevant.[6] *See Davila v. Davila,* 908 P.2d 1027,

---

**4.** *See* Section 4(g)(1) of the Uniform Marital Property Act, 9A U.L.A. 29 (Supp.1986) (cited with approval in *Julsen:* "Property acquired by a spouse during marriage ... is individual property if acquired: (1) by gift or a disposition at death made by a third person to the spouse and not to both spouses.").

**5.** Michael requested such consideration in the trial court. At the outset of his final argument Michael counsel stated:

> First of all, I just hope that the Court doesn't lose sight of the nature of the source of the major part of the property of this couple.
> The Supreme Court has—of Alaska has stated that the Court should take into consider-

ation the source of property when it makes its decision regarding equity. The source of the bulk of the property of these people stems as gifts from Michael's parents to Mike, and that a very substantial amount then began, even if it didn't continue, began as a separate property to Mike. The—and I believe that that should account for this in the court's determination as to how to divide this property.

**6.** AS 25.24.160(a)(4) codifies and slightly expands the listing of "principal factors" relevant to property division set forth in *Merrill v. Merrill,* 368 P.2d 546, 547–48 n. 4 (Alaska 1962).

1032 (Alaska 1995) ("[T]he trial court need not make findings as to every factor, nor do these findings need to be exhaustive, but where the parties raise significant issues regarding particular factors, the trial court must address these issues...."); *Cox*, 882 P.2d at 918–19 ("In making an equitable allocation of the marital property ... the trial court must consider the *Merrill* factors, ... as codified in AS 25.24.160(a)(4)."); *Hanlon v. Hanlon*, 871 P.2d 229, 234 (Alaska 1994) (trial court should specifically address AS 25.24.160(a)(4)(F) factor on remand); *Money v. Money*, 852 P.2d 1158, 1160–61 (Alaska 1993) (equal division of marital property does not relieve court of duty to address relevant statutory factors); *Laing v. Laing*, 741 P.2d 649, 652 (Alaska 1987) (In dividing property the court "should consider, though not necessarily exclusively or exhaustively, the factors set out in *Merrill* ...."); *Burgess v. Burgess*, 710 P.2d 417, 422 (Alaska 1985) (trial court directed to demonstrate consideration of relevant *Merrill* factors on remand); *Brooks v. Brooks*, 677 P.2d 1230 (Alaska 1984) (remand necessary because trial court did not explicitly consider certain relevant *Merrill* factors). This rule applies here. On remand the court should consider the time and manner of acquisition of the property which was given to Michael by his parents.

### D. *Personal Property*

#### 1. *Art and furnishings*

■ Michael disputes the superior court's valuation of certain pieces of artwork and furnishings at the marital home. The trial court valued these at $5,000 and awarded them to Barbara. Michael asserts that they were undervalued.

The evidence before the superior court regarding the value of the art and furnishings consisted of two elements. The first was an appraisal conducted by Mary Ida Henrikson giving values for the artwork in the house. The second was testimony by Barbara that certain of the estimates given by Henrikson were overstated, or that certain of the objects were not hers, or that

certain of the objects were personal gifts to her from friends or family. Michael points to the appraisals to claim that the court clearly erred in valuing the artwork and furnishings at only $5,000. Barbara points to her testimony to argue that the superior court was justified in reducing the total. Neither party examines the inventory item-by-item.

In our view the factual findings concerning the valuation of the art and furnishings are not clearly erroneous.

#### 2. *Jewelry*

Michael challenges the superior court's valuation of Barbara's jewelry. He notes that Barbara gave a value for her jewelry at both a deposition and the trial of $50,000 to $60,000. Barbara did testify that at one time her jewelry was probably worth $50,000, but that she had given much of it away and lost some pieces.[7] She claimed that the jewelry in her possession at the time was worth $3,000 to $4,000. On this record we are unable to say that the trial court clearly erred in valuing the jewelry at $25,000.

#### 3. *Troll permit*

■ Michael possessed a troll permit which he claimed was worth $7,000; he presented an advertisement listing a troll permit for that price to the court. Barbara testified at trial that Michael had paid either $9,000 or $10,000 for the permit, and that she based her estimate of $8,600 on another advertisement in the paper. The trial court did not commit clear error in valuing the permit at $7,500.

#### 4. *Coins*

Michael claimed at trial to have collected at least $30,000 worth of gold coins, bars, and Eisenhower dollars. Barbara testified that she cashed in $1,500 worth of Eisenhower dollars at face value, that there was no gold, and that there were a few other collectible coins.

---

**7.** Michael does not allege that these gifts, apparently effected within two or three years prior to the trial, were fraudulent transfers.

The superior court assigned to Barbara $3,010 worth of coins. Michael has offered no proof that he had $30,000 worth of coins except testimony that he once gave a Kruggerand to his daughter.

■ The superior court found as to the coins: "The chief testimonial dispute relates to the presence or absence of some $30,-000.00 or so in cash/precious metals which [Michael] states he left behind.... Someone is obviously lying about this but the state of the evidence represents in effect an even split on the issue." On this record the finding is not clearly erroneous.

## V. *CONCLUSION*

The property division in this case is vacated and remanded for the following purposes: (1) The court shall correct the amount of the mortgage awarded to Barbara, (2) the court shall make findings as to whether the Pennock Island property has been transmuted into marital property, and (3) the court shall consider the source of the other real property which was given to Michael in making the property division. The court shall make any adjustments in the overall property division as may be appropriate in light of the above.

VACATED and REMANDED.

FABE, Justice, with whom RABINOWITZ, Justice, joins, concurring in part and dissenting in part.

I agree with all aspects of the court's opinion except for Part IV.C, which concerns the superior court's division of real property given to Michael by his parents. Although Michael admits that these parcels are marital property, he argues that the superior court erred in dividing them equally between the parties. In my view, the superior court's equal division of this property was proper and supported by the facts, and there is no necessity for a remand for further findings.

We have held that under AS 25.24.160(a)(4), "[p]roperty available for distribution includes all property acquired during marriage, whether title is joint or separate." *Carlson v. Carlson*, 722 P.2d 222, 224 (Alaska 1986). Michael received the real property at issue from his parents during the course of the marriage, and it was thus available for distribution. The law presumes that a fifty-fifty division of marital property is equitable. *Lundquist v. Lundquist*, 923 P.2d 42, 53 (Alaska 1996); *Jones v. Jones*, 666 P.2d 1031, 1034 (Alaska 1983).

The majority faults the trial court for failing to make specific findings regarding its consideration of the source of the real property acquired from Michael's parents. In *Carlson*, we held that the trial court "always should consider the property's source *when determining what assets are available for distribution*." *Carlson*, 722 P.2d at 224 (emphasis added). Here, however, there was no question that the assets were available for distribution; Michael conceded this point. The *Carlson* court further emphasized that the need to consider the property's source is greater "in a marriage of short duration." *Id*. In the case before us, Michael and Barbara were married for forty years, and they held the disputed property jointly for twenty-two years.

We have stated that the trial court's findings "need not be extensive" as long as they provide "a clear indication of the factors which the superior court considered important in exercising its discretion." *Bird v. Starkey*, 914 P.2d 1246, 1249 n. 4 (Alaska 1996). A trial judge's decision should not be overturned merely because of the judge's failure to "tally the statutory factors" if the trial court has made "a sound decision and no reason exists ... to overturn it." *Julsen v. Julsen*, 741 P.2d 642, 649 n. 10 (Alaska 1987).

The trial court in this case was clearly aware of the source of the various parcels of real property in this marital estate and decided on an equal division of the property acquired during the parties' forty-year marriage. I cannot agree that this decision should be remanded due to inadequate findings. I would therefore affirm the superior court's equal division of the marital property received from Michael's parents.