**Christopher RHODES, Appellant,**

**v.**

**Cynthia RHODES, Appellee.**

**No. S–5261.**

Supreme Court of Alaska.

Feb. 4, 1994.

Christopher Rhodes, pro se.

Allison E. Mendel, Mendel & Huntington, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

*OPINION*

RABINOWITZ, Justice.

## I. INTRODUCTION

In this divorce proceeding, Chris Rhodes appeals the superior court's determination that certain assets he acquired before marriage—halibut gear and a fishing vessel—were marital property subject to equitable division. We affirm in part and reverse in part.

## II. FACTS AND PROCEEDINGS

Chris and Cynthia Rhodes married in 1986, separated in 1990, and obtained a decree of divorce in 1992. Cynthia came to the marriage with little work experience and a ninth grade education. Chris came to the marriage with significant property, work experience in commercial fishing and the oil service industry, and some college education. While married to Chris, Cynthia worked as a homemaker.

Before and during the marriage, Chris operated three fishing vessels: the F/V *Chesapeake*, the F/V *Knightrider*, and a skiff. Chris purchased the *Chesapeake* in 1979, and had paid all of his debt on the vessel, except for the final installment, before his marriage to Cynthia. Similarly, Chris purchased and paid for the skiff before his marriage. Chris acquired the *Knightrider* in 1983 for a purchase price of approximately $147,000. He made a $30,000 downpayment and agreed to make loan payments of approximately $20,000 per year. In 1988 Chris and Cynthia obtained a $185,000 consolidation loan, part of which they used to pay the remaining debt

of approximately $65,000 on the *Knightrider*. Cynthia was a co-signer for the loan, and she and Chris assumed joint and several liability on the debt.

In August 1991 the superior court conducted a hearing for the limited purpose of determining which assets were marital property and which were premarital. The court entered proposed findings on this issue in September. The court determined that the *Chesapeake*, the skiff, property in Homer, Chris' minority interest in his family's business, and a three-wheeler were Chris' premarital, separate property. The court determined that the family residence in Cooper Landing, the *Knightrider*, a van, and a trailer were marital property. Though it recognized that the *Knightrider* was initially separate property, the court determined that the vessel acquired the status of marital property on the grounds that Chris and Cynthia used marital earnings to pay down the consolidated loan by which the couple had refinanced the vessel. Additionally, the superior court characterized the consolidated loan as a marital debt, which "provided refinancing for this significant asset."

The full divorce trial took place in mid-November 1991. The parties disputed the status of a set of halibut gear Chris had bought in March 1986, before the marriage. Cynthia argued that this gear was marital property because it was purchased shortly before the date of marriage, after the parties had become an economic unit, were living together, and were expecting their first child.

In November 1991, the superior court issued its decision in the divorce proceedings. The superior court made an equal division of the marital property, in part because Cynthia had substantially lower earning capacity than Chris. The decision distinguished between marital and separate property in a fashion largely consistent with the proposed findings of September.[1] Without comment, the superior court included among the marital assets the halibut gear that Chris had bought in March 1986.

1. The only change that the court made from its September determination was to recharacterize the three-wheeler as marital property.

Subsequently, the superior court issued *nunc pro tunc* its findings of fact, conclusions of law, and decree of divorce. The court "consider[ed] its [previously entered] extensive written finding[s] adequate," and declined to issue separate findings on the status of the halibut gear. Chris appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

We have established a three-step process for the equitable division of property in a divorce proceeding: (1) determination of the property available for distribution; (2) valuation of the property; and (3) equitable division of the property. *See Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983). Chris challenges the superior court's findings at the first step of the analysis: the determination whether particular assets are marital or separate property.[2] We review the trial court's factual determinations as to the property available for distribution for abuse of discretion. *Doyle v. Doyle*, 815 P.2d 366, 368 (Alaska 1991).

### B. *The Halibut Gear*

Chris argues that the halibut gear that he purchased in March 1986 is his separate, premarital asset.[3] Though the superior court did not state its reasons for characterizing this halibut gear as marital property, Chris suggests that the court may have based its finding on the fact that he and Cynthia were living together at the time of the gear's purchase.

2. Chris also characterizes the superior court's findings as to the *Knightrider* as an invasion of his separate property. This characterization is inaccurate. The determination whether to invade separate property occurs only at the third step of the trial court's analysis. *Chotiner v. Chotiner*, 829 P.2d 829, 831 (Alaska 1992). If the trial court considers property to be marital rather than separate, as is the case with the *Knightrider*, then a determination whether to invade it does not occur.

3. Chris purchased this gear for $8,500. The superior court depreciated this asset to 60% of the original cost, valuing the gear at $5,100 as of the time of trial.

4. Alaska Statute 25.24.160(a)(4) states in part:

Marital property consists of those assets, "whether joint or separate, acquired *only during marriage*." AS 25.24.160(a)(4) (emphasis added);[4] *see also Carlson v. Carlson*, 722 P.2d 222, 224 (Alaska 1986). An asset that is originally premarital may be treated as marital for purposes of distribution if the parties, by their actions during the marriage, demonstrated an intent to treat the asset as a joint holding. *See, e.g., Chotiner v. Chotiner*, 829 P.2d 829, 832–33 (Alaska 1992); *Carlson*, 722 P.2d at 224–25; *Wanberg*, 664 P.2d at 571. One indicia of such intent is to place the property in joint ownership. *Chotiner*, 829 P.2d at 833. Another common indicia is evidence of substantial efforts at joint management, maintenance, or improvement of the property in question.[5] *See, e.g., id.; Carlson*, 722 P.2d at 224–25; *Wanberg*, 664 P.2d at 571.

We note that Cynthia's sole argument on appeal for deeming the halibut gear marital property is that Chris purchased the gear "just prior to the marriage, while the parties were living together, and while Cynthia was already pregnant with their first child." Although "property acquired by ... a couple may be marital property even if the acquisition predates the marriage," commingling of assets alone does not establish the parties' intent to hold property jointly. *Murray v. Murray*, 788 P.2d 41, 42 (Alaska 1990); *see also Carlson*, 722 P.2d at 224.

Because the superior court did not give its reasons for characterizing the gear as marital property, we cannot determine whether the court based its determination on the fact of commingling alone. Though the record

In a judgment in an action for divorce ... the court may provide[:]

. . . .

(4) for the division between the parties of their property ... whether joint or separate, acquired only during marriage, in a just manner and without regard to which of the parties is in fault; however, the court, in making the division, may invade the property ... of either spouse acquired before marriage when the balancing of the equities between the parties requires it. . . .

5. This indicia has been applied only to real property; in appropriate cases, however, it might also be relevant to personal property.

does not indicate that Chris and Cynthia took joint title to the halibut gear, the superior court may have found that one or more acts demonstrated that the couple intended to treat the gear as a joint asset.[6] We cannot determine the factual basis for the superior court's property division from its findings, and so we remand the case for adequate findings on whether the halibut gear is marital or separate property. *See e.g., Murray v. Murray*, 856 P.2d 463, 466 (Alaska 1993); *Merrill v. Merrill*, 368 P.2d 546 (Alaska 1962).

### C. *The F/V Knightrider*

■ Chris argues that the *Knightrider* in its entirety should be treated as separate property, arguing *inter alia* that when the parties refinanced the vessel with the consolidated loan, Cynthia's role was insubstantial.[7] We disagree. Cynthia co-signed the loan and assumed joint and several liability for its repayment. The couple used marital earnings to pay off the consolidated loan. Thus, the parties demonstrated an intent to treat the vessel as marital property by making substantial efforts at joint management of the asset. *See, e.g., Carlson,* 722 P.2d at 224–25; *Wanberg,* 664 P.2d at 571–73.

### IV. CONCLUSION

We AFFIRM the superior court's determination that the F/V *Knightrider* was marital property. We remand the question of whether the halibut gear is a marital asset to the superior court for additional factual findings and any further proceedings deemed necessary by virtue of this remand.[8]

6. The record indicates that Cynthia performed multiple tasks on behalf of the fishing enterprises, including preparation of halibut lines for the fishing season. However, the superior court did not indicate whether such tasks amounted to *substantial efforts devoted to the maintenance,* management, or control of the property at issue under our case law.

7. The parties agreed that the F/V *Knightrider,* with the skiff, was worth $93,000. Because it determined that the skiff was Chris' separate property, the superior court deducted its $3,000

value, arriving at a value for the *Knightrider* of $90,000. Additionally, because it ordered the sale of the *Knightrider,* the superior court deducted a ten percent commission for the sale, reaching a net value to the marital estate of $81,000.

8. Though Chris also appealed the superior court's award of attorney's fees to Cynthia, the parties settled this issue during the course of the appeal. Therefore, this question is no longer before us.