Joanne **GARDNER**, Appellant
and Cross-Appellee,

v.

Lee Wayne **HARRIS**, Appellee
and Cross-Appellant.

Nos. S–6648, S–6677.

Supreme Court of Alaska.

Sept. 20, 1996.

Maryann E. Foley, Anchorage, for Appellant and Cross–Appellee.

William B. Carey, Anchorage, for Appellee and Cross–Appellant.

Before RABINOWITZ, MATTHEWS, COMPTON, and EASTAUGH, JJ., and CARPENETI, J. Pro Tem.*

*OPINION*

CARPENETI, Justice Pro Tem.

## I. INTRODUCTION

This is an appeal from the superior court's property division in a divorce case. Joanne Gardner challenges the trial court's finding that bonds purchased by Lee Harris prior to their marriage failed to transmute into marital property for purposes of equitable distribution. Harris cross-appeals the trial court's refusal to require Gardner to repay her portion of loans collateralized by the bonds which were paid off when the bonds were called. Gardner also challenges the trial court's amended finding that she owes Harris an additional $21,500.74 for her share of post-separation expenses.

We affirm the trial court's determination as to the bonds and remand the order to pay post-separation expenses for additional findings.

## II. FACTS AND PROCEEDINGS

The facts are largely undisputed. Joanne Gardner and Lee Harris married in September 1985 and separated in December 1992. During the marriage, both worked in the oil and gas exploration industry and each earned approximately $80,000 per year.

Shortly before the marriage, Harris invested $63,000 in Valdez Marine Terminal (VMT) bonds, to be worth $90,000 at maturity. Harris held these bonds in a separate account at Merrill Lynch until the summer of 1987, when he transferred them into the couple's joint Merrill Lynch "Cash Management Account." Harris and Gardner held the Cash Management Account as joint tenants with a right of survivorship. The couple's Merrill Lynch stockbroker, Kenneth Jones, testified at trial that both Harris and Gardner possessed independent authority over this account, including individual discretion over whether to trade or cash in the VMT bonds.

Concurrent with the transfer of the bonds, the Cash Management Account became the couple's primary joint financial account. Harris and Gardner made credit card transactions and wrote checks against the account; they each contributed their paychecks to the account; and they applied the bond's interest income, which was rolled into the joint account at approximately $5,500 per year, toward joint expenses. Harris and Gardner also used the bonds to refinance real estate that the couple owned in Monterey, California, and a sailboat, both of which the trial court later found to be marital assets. In December 1993 and immediately before the February 1994 divorce trial, the VMT bonds were called. When the bonds were called, all loans collateralized by the bonds were paid off. The remaining cash balance in the couple's Cash Management Account totalled $29,120.

After considering the evidence, the trial court found that the couple's marital assets should be divided equally. The court set aside the balance of the parties' joint Cash Management Account, finding that it was the separate property of Harris. The court found that although the VMT bonds had been placed into the joint account and had been jointly borrowed against, and that the interest income from the bonds had been exhausted for marital expenses, neither party

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

had cashed the bonds in, traded them, or added additional bonds to the corpus: "The corpus remained intact throughout the marriage, and matured as it would have even if the parties had never married; nor had ever placed them in a joint account." The court gave weight to Harris's testimony that "at no time did Ms. Gardner consider these bonds anything other than his." The court concluded that although the bonds had been called, Harris would retain "the money left from the bonds" as his separate property.[1]

The trial court also addressed post-separation expenses, finding that Harris had spent $4,037.52 more than Gardner on joint post-separation expenses. The court therefore found that Gardner owed Harris fifty percent of this figure, or $2,019.

Harris thereafter moved to amend the findings and judgment or, alternatively, to obtain a new trial. First, Harris explained that the court's findings pertaining to post-separation expenses were limited to expenditures made out of Harris's separate account. Harris documented additional expenses paid out of the joint Cash Management Account, and noted that Gardner's post-separation deposits into that account had been far less than those of Harris. The court accepted Harris's new figures and entered an amended finding that Gardner owed Harris an additional $21,500.74 for her share of personal and joint post-separation expenses paid out of the couple's joint account.

The second argument which Harris pressed focused upon the VMT bonds. Harris urged that having found the bonds to be his separate property, the trial court should have additionally found Gardner responsible for her share of an approximately $40,000 "devaluation" of the bonds, that is, the amount which was repaid to Merrill Lynch out of the bond proceeds to repay loans the couple had taken out to refinance the Monterey property and the boat. The trial court disagreed. In commenting on the status of the bonds, the court noted:

> Having found Mr. Harris' [VMT bonds] to have been his separate property, the court

has already or by amendment if not clear to the parties, [found] the earnings marital property of the parties. Mr. Harris shall retain the bonds, but the earnings are deemed "marital property," and thus were spent on marital expenses during marriage. The bonds themselves were used simply to collateralize the parties' joint loans, and both were equally responsible for the repayment of such loans against the principal of the bonds, Mr. Harris' separate property.

The court specifically deleted language in Harris's proposed order which would have required Gardner to pay Harris $20,000 to partially restore the full worth of his premarital asset.

This appeal and cross-appeal followed.

## III. DISCUSSION

■ Property division at divorce involves a three-step process. " 'First, the trial court must determine what specific property is available for distribution. Second, the court must find the value of this property. Third, it must decide how an allocation can be made most equitably.' " *Chotiner v. Chotiner*, 829 P.2d 829, 831 (Alaska 1992) (quoting *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983)).

■ When reviewing a decision under the first step, this court applies the abuse of discretion standard; however, if a legal determination is involved, we exercise our independent judgment. *Lewis v. Lewis*, 785 P.2d 550, 552 (Alaska 1990); *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988). We will not disturb a trial court's valuation of the parties' assets under step two in the absence of clear error. *Lewis*, 785 P.2d at 552. Finally, a trial court's allocation of property under step three is subject to abuse of discretion review. *Id.*

### A. The VMT Bonds

■ On appeal Gardner challenges the trial court's resolution of the first task: the isolation of marital versus non-marital prop-

---

**1.** In concluding that the bonds were Harris's separate property, the court further observed that because Harris and Gardner enjoyed equal earning capacities, there was no need to invade Harris's separate property in order to balance the parties' equities.

erty for the purpose of equitable distribution. Gardner contends that the trial court erred in setting aside the VMT bonds as Harris's separate property.

Gardner asserts that a series of acts clearly evidenced Harris's intent to donate the VMT bonds to the marriage. Gardner emphasizes Harris's decision to transfer the bonds into the couple's primary joint account where each party possessed full authority over their use. Gardner urges this court to recognize the marital nature of the account, which not only held the bonds but was used by both parties as a depository for paychecks and as a source of funds for joint expenditures. Finally, Gardner notes that Harris testified that he transferred the bonds into the joint account for "the community benefit," and that the parties in fact used the bonds to, among other things, refinance marital property.

Harris acknowledges that the bonds were put to joint use; however, Harris contends that when he transferred the bonds into the joint account, he intended to keep the asset separate but to give the marriage the benefit of better financing which strategic use of the bonds would allow. Harris explains that the transfer of the VMT bonds into the joint account was an administrative convenience, and that Gardner understood that they remained his separate property. Harris cites his testimony that it was a "sore spot" during the marriage that Harris refused to cash in the VMT bonds, and he refers to testimony in which the couple's stockbroker observed that it was Harris, not Gardner, who appeared to be "in control" of the bonds.

■ Under AS 25.24.160, only property acquired *during* the marriage, whether jointly or separately held, may be distributed by the trial court at divorce. AS 25.24.160(a)(4). However, it is a well-settled principle that property acquired before marriage "can become marital property where that is the intent of the owner and there is an act or acts which demonstrate that intent." *Chotiner,* 829 P.2d at 832; *see also Rhodes v. Rhodes,*

867 P.2d 802, 804 (Alaska 1994); *Wanberg,* 664 P.2d at 571. The present case requires the court to consider whether the bonds themselves have transmuted in character because the original owner has chosen to treat the property as a joint holding.

■ In previous cases we have identified several factors that can assist the trial court in determining whether a spouse intended to treat his or her separate property as marital. One significant indication is evidence that both spouses have actively participated in the ongoing maintenance and management of the property. *Rhodes,* 867 P.2d at 804 & n. 5 (noting that although this factor has traditionally been applied to cases involving real property, "it might also be relevant to personal property"). In the case of real estate, this court has looked to whether the couple used the property as a marital residence and whether the credit of the non-titled owner was used to improve the property. *Cox v. Cox,* 882 P.2d 909, 916 (Alaska 1994). In addition, evidence of an oral or written agreement to convert pre-marital property to, or keep it separate from, marital property is probative. *Chotiner,* 829 P.2d at 833. Finally, although we have stated that "the act of commingling, in itself, does not automatically establish intent to jointly hold property," *Carlson v. Carlson,* 722 P.2d 222, 224 (Alaska 1986), we have held that "placing separate property in joint ownership is rebuttable evidence that the owner intended the property to be marital." *Chotiner,* 829 P.2d at 833; *Lewis,* 785 P.2d at 555.

After considering the arguments and record, we conclude that the trial court gave sufficient weight to these factors. Given the deferential standard of review that we apply to the trial court's decision, we cannot say that the decision that the VMT bonds remained Harris's separate, pre-marital asset was an abuse of discretion.[2] Harris transferred his bonds into an account which he held with Gardner for the purpose of using them to obtain credit. Once the bonds were placed into the account, Harris ran the risk

---

2. In concluding that the VMT bonds retained their character as Harris's separate property, the trial court identified what it viewed as the pivotal factor: the fact that "[t]he corpus [of the bonds] remained intact throughout the marriage, and matured as it would have even if the parties had never married; nor had ever placed them in a joint account."

that the bonds would be called and the credit used. Until the credit was used the bonds remained Harris's separate property. When the bonds were called, however, the portion that was used for credit was lost, and the remaining proceeds remained Harris's separate property.

### B. *Post-Separation Expenses*

■ Gardner also challenges the trial court's amended finding that she must pay Harris an additional $21,500.74 for her share of personal and joint post-separation expenses.

The trial court originally found that Harris had overspent Gardner by $4,037.52 on joint post-separation expenses. In a motion to amend the findings, Harris stated that the court's finding had been based only upon payments made out of Harris's separate account. Harris's request for an amendment was based on the additional post-separation expenses paid from the joint Cash Management Account, and the difference between their post-separation deposits into that account. The trial court granted the motion to amend and awarded Harris the amount requested, finding:

> The defendant paid a total of $11,054.65 of plaintiff's post-separation personal expenses and $14,925.53 of plaintiff's share of the parties' joint post-separation expenses. Plaintiff made post-separation deposits into the account from which the payments were made in the sum of $4,479.44 and should be given credit against the above amounts for these deposits. Plaintiff, Joanne Gardner therefore owes defendant, Lee Wayne Harris, the sum of $21,500.74 for her share of post-separation expenses paid for out of the parties' [Cash Management] [A]ccount.

Gardner contends on appeal that the amount awarded was erroneous because it was based upon Harris's figures which contained inaccuracies and mathematical errors. Harris disagrees, arguing that the trial court

was entitled to accept the figures that he presented.

We cannot determine on this record the basis for the award of post-separation expenses.[3] Accordingly, we must remand this issue to the trial court for entry of specific findings supporting the basis for the award of $21,500.74 to Harris. *See Merrill v. Merrill,* 368 P.2d 546, 548 (Alaska 1962) (this court requires "sufficiently detailed and explicit findings" for a clear understanding of the basis for trial court's decision), *quoted in Chotiner,* 829 P.2d at 833.

## IV. CONCLUSION

The trial court did not abuse its discretion in concluding that the VMT bonds purchased by Harris prior to the marriage remained his separate property. We therefore AFFIRM the trial court's holding that the bonds remained Harris's separate property. On that basis, we deny Harris's cross-appeal. Finally, we REMAND Gardner's challenge regarding post-separation expenses for additional findings.

MOORE, C.J., not participating.

RABINOWITZ, J., with whom EASTAUGH, J., joins, dissents in part.

RABINOWITZ, Justice, with whom EASTAUGH, Justice, joins, dissenting in part.

After finding that the VMT bonds were Harris's separate property, and in response to Harris's motion to amend the findings and judgment, the superior court observed that

> [t]he bonds themselves were used simply to collateralize the parties' joint loans, and both were equally responsible for the repayment of such loans against the principal of the bonds, Mr. Harris' separate property.

The superior court then deleted language in Harris's proposed order which would have required Gardner to pay Harris $20,000 to partially restore the full worth of his separate pre-marital asset. In his cross-appeal

---

**3.** Reference to the exhibits presented at trial does not reveal how the trial court reached its conclusions that Harris paid $11,054.65 of Gardner's post-separation personal expenses, $14,925.53 of Gardner's share of the parties' joint post-separation expenses, or that Gardner made post-separation deposits of $4,479.44 for which she should receive credit.

Harris asserts that the superior court erred in not requiring Gardner to pay $20,000 as her portion of the loans made against the bonds.

The court disposes of Harris's cross-appeal point in the following manner:

> Once the bonds were placed into the account, Harris ran the risk that the bonds would be called and the credit used. Until the credit was used the bonds remained Harris's separate property. When the bonds were called, however, the portion that was used for credit was lost, *and the remaining proceeds remained Harris's separate property.*

Op. at 9 (emphasis added).

Harris argues that the superior court should have found Gardner responsible for her share of an approximate $40,000 "devaluation" of the bond, the amount which was repaid to Merrill Lynch out of the bond proceeds to repay loans the couple had taken out to refinance the Monterey property and the boat. In my opinion, Harris's cross-appeal point is meritorious, and I would hold that the superior court erred in not requiring Gardner to pay her portion of the loans made against the bonds.

I think it determinative that the superior court ruled that Harris and Gardner "were equally responsible for the repayment of such loans against the principal of the bonds...." In the absence of an agreement by Harris that he would bear sole responsibility for the loans if the bonds should be called, and given the superior court's finding that both were equally responsible for repayment of the loans against the principal of the bonds, I conclude that the superior court erred in not requiring Gardner to pay her portion of the loans repaid upon the call of the bonds.

If, as this court concludes, the portion of the proceeds not used to repay the loans remains Harris's separate property, then what transforms the portion of the proceeds used to repay the loans into marital property? I perceive of no principled way to distinguish between the two parts of the bonds used as collateral other than some type of agreement regarding the repayment of the loans in the contingency that the bonds were called. The superior court found no such agreement.