*In re* MARRIAGE OF JANINA HAPANIEWSKI, Petitioner-Appellee, and STANISLAW JAN HAPANIEWSKI, Respondent-Appellant.

First District (3rd Division)    No. 80-19

Opinion filed June 2, 1982.—Rehearing denied August 11, 1982.

Saul R. Leibowitz, of Reilly, Sentman, Woolley & Leibowitz, of Chicago, for appellant.

Michael H. Lavin, of Chicago (Alan Michael Katz, of counsel), for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

This appeal is taken from the judgment of dissolution of the marriage of Janina Hapaniewski, the petitioner, and Stanislaw Jan Hapaniewski, the respondent. The sole issue on appeal is whether the trial court erred in dividing the property of the parties.

The petitioner and respondent were married on February 16, 1966. Four children, ranging in age from 6 to 12 years at the time of trial, were born to the parties during the marriage. Neither the petitioner, who was 32 years of age, nor the respondent, who was 44 years of age and a disabled American veteran, were employed. The parties acquired two pieces of real property during the marriage—rental property, located in Chicago, and a single-family residence, located in Summit, Illinois. Legal title to both properties was held by the petitioner and respondent in joint tenancy, and both buildings were encumbered by a combined mortgage having a balance of $39,173.20. The monthly mortgage payment was $372.

At trial, the respondent was called as an adverse witness. He testified that the Chicago property was acquired in June 1968 at a price of $19,500 while he was employed and before he received Veterans' Administration benefits. Mortgage insurance on the $16,500 mortgage was obtained; and when the respondent was declared disabled in 1970, proceeds from that

policy reduced the mortgage to about $3,500. The respondent stated that the remaining mortgage was paid with his veterans' benefits. He further stated that the down payment on the Chicago property was $3,000 and that he accumulated that money by cashing in two life insurance policies and some bonds that he had purchased during his marriage. He denied that he saved $1,000 and had borrowed $2,000 from relatives. The Summit property was acquired at a purchase price of $39,000 or $40,000.

The respondent further testified that he was receiving Veterans' Administration benefits of $973 per month but that his benefits were to be reduced to $924 per month.[1] He also received $410 a month from the Social Security Administration and $195 per month in rental income from the rental of two of the four apartments on the Chicago property. The respondent lived in the third apartment and had collected rent of $95 per month for the fourth apartment until the tenants vacated that apartment the previous month. The respondent testified that the mortgage payments were in arrears for three months. He stated that during this three-month period he had spent his income on his children during his visitation with them and that he spent about $200 a week on food, $17 a month on water bills, $10 or $20 a month for electricity and was due to make a car insurance payment of $43. The respondent also testified that he owed $1,600 to his sister; $75 to his brother; $2,900 on a charge card; and $66 for a telephone bill.

The petitioner testified that the $3,000 down payment on the Chicago property was made with $1,000 from the respondent's savings and $2,000 that he had borrowed. She did not know whether her husband had a life insurance policy when the Chicago building was purchased and stated that the respondent did not own stocks or bonds at that time. The petitioner further testified that during her marriage to the respondent, the family's weekly food bill was $80 to $85. She stated that her outstanding bills amounted to $71 for gas, $16 to $20 for electricity, and $563 for hospital and doctor's services for her son. The petitioner's only income was $467 a month from the Social Security Administration for her children and $30 per week from her brother who was living with her.

Based upon the testimony presented at trial, the court awarded the petitioner custody of the four children and both parcels of real estate which he valued at approximately $91,000 and determined the equity to be between $50,000 to $55,000. The petitioner and the respondent were

---

[1] The reason for the reduction in benefits was not elicited at trial. However, in August of 1979, when the trial occurred, a totally disabled veteran with a spouse and four children was entitled to monthly compensation of $973. A totally disabled veteran with four children and no spouse was entitled to $924 per month. (38 U.S.C. secs. 314, 315 (1976), as amended by Act of Oct. 18, 1978, Pub. L. 95-479, title I, secs. 101(a), 102(a), 92 Stat. 1560, 1562 (1978).) Thus, it would appear that the reduction of benefits to the respondent would be due to the dissolution of his marriage to the petitioner.

barred from maintenance, and the court reserved ruling on child support. The parties were awarded the furniture in their possession and were ordered to pay equally the mortgage arrearages.

The respondent contends that the award of both parcels of real estate to the petitioner was error because it violated Federal and State law. He argues that under Federal law, military benefits are nonmarital property and should not be considered in the division of marital property. It is the respondent's position that the trial court violated this law by awarding the petitioner both pieces of real estate as an offset to his Veterans' Administration benefits. The respondent also contends that under Illinois law both pieces of property were his nonmarital property as they were acquired with his military benefits.

The first issue we must deal with is whether the respondent's military disability benefits are marital property. The petitioner contends that in accordance with *In re Marriage of Smith* (1980), 84 Ill. App. 3d 446, 405 N.E.2d 884, the respondent's disability benefits were marital property because they were acquired during the marriage and because they did not meet any statutory exceptions set forth in section 503(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)).

*Smith* is not conclusive as to the issue raised herein since *Smith* was concerned with a nonmilitary disability pension which was not created by Federal law. We believe that Federal law has preempted all State law on the subject of whether military benefits are marital or community property. In *McCarty v. McCarty* (1981), 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728, the United States Supreme Court held that Federal law precludes a State court from dividing military nondisability retirement pay pursuant to State community or marital property laws. In reaching such a conclusion, the court examined the applicable Federal statutes and determined that the military retirement benefits in question were " 'a *personal entitlement* payable to the retired [military] member himself as long as he lives.' " 453 U.S. 210, 224, 69 L. Ed. 2d 589, 601, 101 S. Ct. 2728, 2737 (quoting from S. Rep. No. 1480, 90th Cong., 2d Sess. 6 (1968)).

■■ An examination of the legislative scheme applicable in the instant case leads to a similar conclusion with regard to a veteran's disability benefits. Such benefits also are payable to the veteran (see, *e.g.*, 38 U.S.C. secs. 310, 314, 315, 331, 334 (1976 & Supp. III 1979));[2] and, as with military retirement pay, military disability payments cannot be attached or assigned (see 37 U.S.C. sec. 701(c) (1976); 38 U.S.C. sec. 3101(a) (1976); *cf.* 42 U.S.C. sec. 659 (Supp. III 1979) (Federal benefits may be subject to legal process to enforce child support or alimony obligations)). Further support for such a conclusion is found in the legislative history of the

---

[2] The respondent's total disability was service-connected.

veterans' disability compensation program. The basic purpose of that program is to provide relief from the impaired earning capacity of veterans disabled as the result of their military service. (H.R. Rep. No. 96-1155, July 2, 1980, 1980 U.S. Code Cong. & Ad. News 3307, 3310 (hereinafter cited as H.R. Rep. No. 96-1155); see *State ex rel. Eastern State Hospital v. Beard* (Okla. 1979), 600 P.2d 324.) In furtherance of this purpose and to ensure the purchasing power of the disabled veteran, Congress historically has increased the compensation rates whenever there has been an appreciable increase in the cost-of-living index. (H.R. Rep. No. 96-1155, at 3311, 3316.) We believe that the classification of a veteran's disability benefits as marital property would diminish the benefits that Congress has said should go to the veteran and would cause an injury to Federal interests which is forbidden by the supremacy clause of the Federal Constitution (U.S. Const., art. VI, cl. 2). (See *McCarty v. McCarty*; *Hisquierdo v. Hisquierdo* (1979), 439 U.S. 572, 59 L. Ed. 2d 1, 99 S. Ct. 802.) Thus, we hold that the respondent's veterans' disability benefits are his nonmarital assets.

It is clear from the record in the case at bar that the trial court did not find the respondent's military disability benefits to be marital property. The respondent contends, however, that the trial court attempted to overcome the prohibition against treating his benefits as marital property by awarding the petitioner both parcels of property to offset his cash benefits. The respondent argues that a similar division of property was rejected by the Supreme Court in *Hisquierdo v. Hisquierdo* wherein the court held that retirement benefits under the Federal Railroad Retirement Act of 1974 (45 U.S.C. sec. 231 *et seq.* (Supp. IV 1974)) were not community property and that Federal law would have been violated if the employee's spouse was awarded a portion of those benefits or if the employee's spouse was awarded other community property to offset his or her interest in those benefits.

We believe that the respondent's reliance on *Hisquierdo* is misplaced since the offset argument therein was premised on the assumption that the railroad retirement benefits were community property. In the case at bar, the respondent's disability benefits were not classified as marital property, and the court did not award the real estate to the petitioner as an offset to her interest in the respondent's disability benefits.

■■ The respondent's interest in the disability benefits was a factor properly considered by the trial court when, after determining the real estate to be marital property, it awarded the properties to the petitioner. Section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)) provides for the division of marital property:

"* * * without regard to marital misconduct in just proportions considering all relevant factors, including:

(1) the contribution or dissipation of each party in the acquisition, preservation, * * * of the marital and non-marital property, including the contributions of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

* * *

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs of each of the parties;

(8) the custodial provisions for any children;

(9) whether the apportionment is in lieu of or in addition to maintenance; and

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income."

In accordance with section 503(c), the respondent's receipt of veterans' benefits, as nonmarital property set aside to him, was a factor to be considered in the division of the marital property. (*In re Marriage of Meyer* (1981), 103 Ill. App. 3d 44, 430 N.E.2d 610; *In re Marriage of Ellis* (1975), 36 Col. App. 234, 538 P.2d 1347.) Error was committed, however, when the trial court did not determine a value for the respondent's nonmarital property. (See *In re Marriage of Donley* (1980), 83 Ill. App. 3d 367, 403 N.E.2d 1337; *In re Marriage of Wildin* (1977), 39 Col. App. 189, 563 P.2d 384.) The value of the respondent's veterans' benefits would of course depend upon such factors as the respondent's life expectancy and the present value of future increased benefits.[3] Absent such a valuation, we do not believe that the marital property of the parties could have been equitably divided, and, therefore, we find it necessary to remand this case for further proceedings.

---

[3] From 1917 to 1978, for example, the cumulative increase in compensation paid to totally and permanently disabled service-connected unmarried veterans was more than 911 percent. H.R. Rep. No. 96-1155, July 2, 1980, 1980 U.S. Code Cong. & Ad. News 3307, 3311-12.

■■ We do not mean to intimate, however, that the marital properties of the parties could never be awarded in their entirety to the petitioner. There is no requirement in Illinois that marital property be divided equally (*In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 402 N.E.2d 831, *aff'd in part, vacated in part, appeal dismissed in part* (1981), 87 Ill. 2d 174, 429 N.E.2d 465, *cert. denied* (1982), ___ U.S. ___, 72 L. Ed. 2d 162, 102 S. Ct. 1751), and it is possible for one party to receive all the marital assets as his or her "just proportion" (see *In re Marriage of Lloyd* (1980), 81 Ill. App. 3d 311, 401 N.E.2d 328). In accordance with section 503(c) of the Illinois Marriage and Dissolution of Marriage Act, the petitioner was entitled to a significant portion of the marital property due to her contributions as a homemaker for the duration of the marriage, the custody award of the four children, the petitioner's limited employment resources due to time restraints and minimal occupational qualifications, and the absence of a maintenance award. Also, courts are encouraged to provide for the financial needs of the spouses by property distribution rather than by an award of maintenance. (Ill. Ann. Stat., ch. 40, par. 503, Historical & Practice Notes, at 467-68 (Smith-Hurd 1980); see *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.) Thus, we believe it to be conceivable that the petitioner could be awarded the primary marital assets; we merely hold that such an award was inappropriate without an evidentiary determination of the value of the respondent's nonmarital assets.

The final argument made by the respondent in this appeal is that the trial court incorrectly determined that the Chicago and Summit properties were marital assets. The respondent contends that the properties were his nonmarital assets as they were acquired with his disability benefits which were his nonmarital assets.

■■ According to the evidence presented at trial, the Chicago property was acquired in 1968 while the respondent was employed. The respondent did not receive veterans' benefits until 1970. While the evidence conflicts as to the sources of the down payment on that property, it is clear from the record that no portion of the down payment came from the respondent's veterans' benefits. It is also clear from the record that some marital funds were applied toward the acquisition of that property. Any nonmarital disability benefit payments that were subsequently applied to the mortgage on that property were transmuted into marital property because they were commingled with marital assets. *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 427 N.E.2d 1239; *In re Marriage of Smith* (1981), 102 Ill. App. 3d 769, 430 N.E.2d 364.

■■ ■ Similarly, the Summit property became marital property when it was purchased via a combined mortgage with the Chicago property which was itself marital property. Furthermore, when property is acquired

during marriage and when title is taken in joint tenancy, there is a presumption that the property is marital property. (*Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 429 N.E.2d 465.) This is true even where one of the spouses has furnished all of the consideration using nonmarital funds. (*In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 422 N.E.2d 635.) As the respondent did not overcome this presumption (Ill. Rev. Stat. 1979, ch. 40, par. 503(b)), and as the evidence presented at trial supports a contrary position, we conclude that the trial court correctly held both parcels of property to be marital property.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings in accordance with the views expressed herein.

Reversed and remanded.

WHITE, P. J., and McNAMARA, J., concur.