**In re the MARRIAGE OF Dorrance E. GREEN, Appellant,**

**and**

**Arlene M. Green, Appellee.**

**No. 05CA2642.**

Colorado Court of Appeals, Div. V.

April 5, 2007.

Certiorari Denied Oct. 9, 2007.

Harding & Associates, P.C., Phil Harding, April Armani, Denver, Colorado, for Appellant.

Bradley Devitt & Arp, P.C., Randall C. Arp, Golden, Colorado, for Appellee.

Opinion by Judge J. JONES.

In this dissolution of marriage proceeding, Dorrance E. Green (husband) appeals from the permanent orders regarding the division of marital property. We affirm.

## I. Background

Before dissolving the twenty-three-year marriage of husband and Arlene M. Green (wife) in 2005, the district court received a series of reports from a special master retained to trace the parties' marital and separate assets. Based upon the special master's reports, the court determined that all the parties' assets were marital, and ordered that they be divided equally. Husband appeals from this ruling.

## II. Discussion

### A. Enforceability of Agreements Regarding Property

Husband contends that two agreements executed by the parties in 1981 and 1991 govern how their property should be divided, and that the district court erred in concluding that they are not enforceable agreements under the Colorado Marital Agreement Act, § 14–23–01, et seq., C.R.S.2006. We do not agree.

In August 1981, approximately five months before their marriage, the parties entered into a one-page agreement stating that it was their intention "to live together," to share all expenses and profits, and to purchase a specified residence together. In December 1991, shortly after wife first petitioned for dissolution of the marriage, husband and wife entered into a second agreement in which they reaffirmed the 1981 agreement and agreed that in the event of a marital breakdown, each party "shall leave the marriage with only what was contributed by them no more no less." Wife later stated in an affidavit that she had signed the 1991 agreement at husband's insistence, that it was signed in an effort to reconcile the marriage, and that after signing the agreement she had learned that the representations that husband had made concerning his net worth were substantially incomplete.

In December 2002, the district court heard the testimony of both husband and wife regarding these agreements. Applying the law in effect at the time the parties entered into each of the agreements, the court determined that the 1981 agreement was not an enforceable premarital agreement because the parties were not contemplating marriage when they entered into it, and the 1991 agreement was not an enforceable marital agreement because it was signed after wife petitioned for dissolution of the marriage and because the parties were not on an equal emotional or economic footing when they entered into the agreement.

■ The court correctly applied the law, and, because a transcript of the December 2002 hearing on this matter is not included in the record submitted to this court, we must assume that its findings are supported by the record. *See In re Marriage of Tessmer*, 903 P.2d 1194, 1197 (Colo.App.1995) (where the record is incomplete, the appellate court must presume the record supports the trial court's ruling). Accordingly, we will not disturb the district court's ruling on this issue.

### B. Determination of Marital Assets

■ Husband contends that the district court erred in determining that his veteran's disability and Social Security disability benefits paid during the marriage were marital assets and in dividing them as marital assets. We do not agree that the court treated husband's disability benefits as marital assets. Rather, the court determined that the income husband received during the marriage that was derived from his disability benefits became a marital asset when it was commingled with marital funds. We agree with that conclusion.

■ Income produced by separate assets during the marriage is presumed to be marital property. *In re Marriage of Foottit*, 903 P.2d 1209, 1212 (Colo.App.1995). In ad-

dition, where a spouse's premarital property has been commingled with marital property so that it is not possible to trace existing property to the spouse's separate property, the premarital property does not retain its separate character. *In re Marriage of Goldin*, 923 P.2d 376, 381–82 (Colo.App.1996).

■ Notwithstanding these principles, husband argues that 38 U.S.C. § 5301(a)(1), (a)(3)(A), applicable to military disability benefits, and 42 U.S.C. § 407, applicable to Social Security disability benefits, require that the district court's property division be reversed. Both provisions state, using similar language, that disability benefit payments are not subject to attachment, levy, seizure, or other legal processes. Husband reads these provisions too broadly.

These provisions preclude treating the disability payments themselves as marital property. *See Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989); *In re Marriage of Warkocz*, 141 P.3d 926, 929 (Colo.App.2006); *In re Marriage of Franz*, 831 P.2d 917, 918 (Colo.App.1992). In *Carrier v. Bryant*, 306 U.S. 545, 59 S.Ct. 707, 83 L.Ed. 976 (1939), however, the Supreme Court held that veterans' disability payments lost their exempt character under a predecessor statute to 38 U.S.C. § 5301(a) when they were used to purchase notes and bonds held as investments. Further, in *Porter v. Aetna Casualty & Surety Co.*, 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962), the Court construed a predecessor statute to § 5301(a) as exempting veterans' disability benefits from attachment only if "the benefit funds ... are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments." *Porter, supra*, 370 U.S. at 162, 82 S.Ct. at 1233.

Applying *Carrier* and *Porter*, courts in other states have determined that income derived from disability benefits belonging solely to one spouse becomes marital property if commingled with marital assets. *See, e.g., In re Marriage of Hapaniewski*, 107 Ill.App.3d 848, 63 Ill.Dec. 535, 438 N.E.2d 466, 471 (1982) (nonmarital disability benefit payments applied to mortgage on marital property were transmuted into marital property

because they were commingled with marital assets); *Bischoff v. Bischoff*, 987 S.W.2d 798, 799–800 (Ky.Ct.App.1998) (same); *In re Marriage of Box*, 968 S.W.2d 161, 166–68 (Mo.Ct.App.1998) (Social Security benefits and nonmarital pension benefits received during marriage and commingled with marital income are presumed to be marital property even though the source of the income remains nonmarital); *Gray v. Gray*, 922 P.2d 615, 619 (Okla.1996) (items of personal property that were purchased with disability benefits were marital property); *Pfeil v. Pfeil*, 115 Wis.2d 502, 341 N.W.2d 699, 702–03 (Ct.App.1983) (real property purchased with disability benefits was marital property). We agree with these decisions.

Here, the special master determined that "significantly all of the assets of the parties" were commingled early in the marriage, and that husband's contention that his Social Security income was separate property was not supported by the documentation that he provided. We may not reweigh the evidence to reach a different conclusion. *See Gebhardt v. Gebhardt*, 198 Colo. 28, 30, 595 P.2d 1048, 1050 (1979) (an appellate court cannot substitute itself as a finder of fact; thus, factual findings of the trial court are not to be disturbed on appeal unless clearly erroneous and not supported by the record).

### C. Special Master's Findings

Husband contends that the district court erred in accepting the special master's "erroneous findings" regarding the parties' separate and marital property, and in dividing the marital assets in accordance with those findings. We disagree.

In August 2001, the parties entered into a stipulation to retain an expert "to trace the parties' marital and separate assets." Between August 2001 and May 2005, the special master issued a dozen reports setting forth his findings regarding the parties' assets. The special master repeatedly advised both parties that he needed detailed documentation to support a party's claim that property was separate rather than marital. The court, agreeing with the special master's findings, determined that the parties' assets had been

commingled "as far back as 1985," and that none of the assets of the parties retained its separate character.

C.R.C.P. 53(e)(2) provides that a court in a nonjury action must accept a special master's factual findings unless they are clearly erroneous. *See also Dobler v. Dist. Court,* 806 P.2d 944, 946 (Colo.1991).

Here, the court concluded that there was no evidence showing that the special master's conclusions were erroneous. On appeal, the only conclusion of the special master with which husband takes issue is that his Social Security disability benefits were marital property.

As discussed above, we have concluded that the special master did not err in finding that those payments became marital property once they were commingled with marital assets. Further, evidence supports the special master's finding that the disability benefit payments were commingled with marital property. Hence, the district court did not err in relying on the special master's findings.

### III. Wife's Request for Attorney Fees

Wife contends that the appeal is frivolous and vexatious, and intended to frustrate justice and delay transferring wife's property to her. Under C.A.R. 38(d), she requests an award of attorney fees.

We conclude that husband's appeal is not frivolous, and therefore we deny wife's request for attorney fees incurred on appeal. To the extent wife contends she is entitled to an award of attorney fees because husband has not complied with the district court's order to deposit funds into the registry of the court, she may raise that matter in the district court.

The judgment is affirmed.

Judge VOGT and Judge CARPARELLI concur.