Opinion by JUDGE BERNARD
¶ 1 This is an appeal in a dissolution of marriage case. The husband, Nevan Corak, raises two issues concerning the trial court's permanent orders that allocated marital property and marital debt. He asserts that *644 the trial court erred when it (1) decided that a portion of his separate property became marital property when he pledged it as collateral to secure a marital loan and (2) declined to include in the marital estate the amounts that his wife, Amy Corak, spent during the marriage to retire her separate debt.
¶ 2 We first conclude that the act of pledging separate property as collateral to obtain a loan for marital purposes does not automatically turn separate property into marital property. Accordingly, we reverse the trial court's ruling on that issue, and we remand the case for further proceedings.
¶ 3 We next conclude that husband has intentionally abandoned his contention that the court should have included funds that wife paid to retire her separate debt in the marital estate. We also conclude that husband invited any error that the trial court may have committed when addressing this contention.
I. Background
¶ 4 Husband and wife entered into a prenuptial agreement shortly before they were married in 2010. The agreement identified the separate property that each had acquired before the marriage. This separate property included a parcel of husband's property that we shall call the Shoshone property. The agreement stated that all the separate property, including the Shoshone property, would remain separate property.
¶ 5 One month after husband and wife married, they decided to buy a piece of property together. We shall call it the Pinyon property. Husband pledged the Shoshone property as collateral for a home equity line of credit for the down payment on the Pinyon property and for the funds to remodel it.
¶ 6 Husband and wife also agreed to apply $16,000 from the line of credit to retire one of wife's premarital credit card debts. This credit card debt carried a higher interest rate than the line of credit. Husband and wife agreed that wife would make payments toward the line of credit.
¶ 7 Wife testified at the permanent orders hearing in 2012. She stated, without dispute, that she had made all of the payments on the line of credit during the marriage, even beyond the amount that she used to retire her separate debt. She added that she had also paid down some of her other premarital debts.
¶ 8 Husband testified that he had also paid down his separate debt during the marriage. He admitted that he had not disclosed this debt in the prenuptial agreement. He owed it to his family in Croatia.
II. Analysis
A. The Shoshone Property
¶ 9 When distributing a marital estate, a court must determine whether an asset is a marital asset, which is subject to division, or a separate asset, which is not subject to division. In re Marriage of Jorgenson, 143 P.3d 1169, 1171-72 (Colo.App.2006) ; see also § 14-10-113(1), C.R.S.2014 (requiring a court to set apart separate property to each spouse and to divide the marital property). The classification of property as a marital asset or a separate asset is an issue of law that is based on the court's findings of fact. In re Marriage of Krejci, 2013 COA 6, ¶ 3, 297 P.3d 1035.
¶ 10 So, in this case, we defer to the trial court's factual findings, which are not in dispute. But we review de novo its legal determination that husband's act of pledging the separate Shoshone property as collateral for the line of credit turned a portion of it into marital property. See id. ; see also In re Marriage of Cardona, 2014 CO 3, ¶ 9, 316 P.3d 626.
¶ 11 Marital property includes all property that either spouse acquires during the marriage. It does not include property that the spouses acquired before the marriage, or that they have agreed will remain separate. See § 14-10-113(2) - (4). When one spouse puts separate property in joint ownership with the other spouse during the marriage, a court presumes it to be marital property unless there is clear and convincing evidence to the contrary. Krejci, ¶ 4 ; see also § 14-10-113(7)(a) ( "[G]ifts from one spouse to another ... shall be presumed to *645 be marital property and not separate property. This presumption may be rebutted by clear and convincing evidence."). Separate property that is so commingled with marital property that it cannot be traced back to its original separate form becomes marital property. See In re Marriage of Green, 169 P.3d 202, 204 (Colo.App.2007).
¶ 12 Wife argued at the permanent orders hearing that the Shoshone property was marital property because (1) husband had pledged it as collateral for the line of credit and (2) husband and wife used the line of credit for marital purposes. Husband responded that the Shoshone property remained his separate property. The trial court determined that the Shoshone property had become marital property to the extent that a portion of it secured the line of credit. It then awarded this marital portion of the Shoshone property to husband.
¶ 13 We begin our analysis by rejecting wife's argument that the court did not err because it awarded both the marital and separate portions of the Shoshone property to husband. The court included the marital portion of the Shoshone property in its calculation of an equalization payment. This was error because, as we explain in more detail below, the Shoshone property remained separate property. There was therefore no marital portion to include in the calculation of an equalization payment.
¶ 14 We next respectfully disagree with the trial court's determination that husband gave the marital portion of the Shoshone property to the marriage as a gift in order to obtain the line of credit. Rather, we conclude that husband did not transfer all or part of the Shoshone property or its value to the marriage as a gift. Cf. In re Marriage of Schmedeman, 190 P.3d 788, 791-92 (Colo.App.2008) (holding that spouse's father's intent to transfer property to the spouse in the future did not qualify as a gift to the marriage and render the property a marital asset when no transfer of the property had yet taken place at the time of dissolution). Our review of the record indicates that the title to the Shoshone property was never transferred to the lender or to wife. Because title to the property did not change hands, the facts in this case are not analogous to a case in which one spouse places separate property in joint ownership during a marriage, which creates a presumption that the separate property has become marital property. Cf. Krejci, ¶ 4.
¶ 15 We also conclude that husband did not commingle the Shoshone property with marital property, which could have affected its status as separate property. Cf. Green, 169 P.3d at 203-05 (upholding finding that spouse's separate income from his disability benefits became marital after it was commingled with marital funds). Rather, wife made all the payments on the line of credit when they were due; husband and wife did not default; and the lender never moved to foreclose the property to satisfy the debt.
¶ 16 It is clear that the Pinyon property was a marital asset, that the money obtained from the line of credit was a marital asset, and that the obligation created by the line of credit was a marital debt. But we conclude that the use of the Shoshone property as collateral did not turn all or part of it into marital property. Because Colorado case law has not addressed this issue, we look to decisions from other states that have addressed it.
¶ 17 In Layman v. Layman, 62 Va.App. 134, 742 S.E.2d 890, 892-93 (2013), the spouses, similarly to husband and wife, had taken out $110,000 in loans. They partially secured this debt with some separate properties that the husband had inherited. The trial court in that case held that they had commingled separate property and marital property, so all the property had become marital property. See id. at 891-92.
¶ 18 The Virginia Court of Appeals disagreed. It held that "using separate property to secure a loan which is used for marital purposes and is subsequently repaid in full using marital funds does not transmute the pledged property into marital property." Id. at 893. The court noted that the discharge of the loans with marital assets did not increase the equity in the husband's separate inherited property. Instead, the discharge only added value to the other marital properties that the spouses had acquired with the loans. Id. Accordingly, there was no commingling, *646 and no part of the pledged property became marital property merely because it had served as collateral to acquire the loans.
¶ 19 Courts in Alaska and Florida have reached similar conclusions. See Gardner v. Harris, 923 P.2d 96, 99-100 (Alaska 1996) (holding that spouse's separate bonds that were used to obtain credit for marital purposes, but then were never called, remained the spouse's separate property); Farrior v. Farrior, 736 So.2d 1177, 1178-79 (Fla.1999) (holding that spouse's separate inherited stock used as collateral for the parties' joint debts remained separate property because it was never sold, intermingled with other marital stock, or titled other than only in the spouse's name).
¶ 20 We are persuaded by the rationales and the results in these three cases, so we shall follow them in this one. See People v. Weiss, 133 P.3d 1180, 1187 (Colo.2006) ("Although not binding as precedent, we may look to decisions of other jurisdictions for persuasive guidance on matters that are of first impression to us."). We therefore conclude that the trial court erred when it (1) characterized a portion of the Shoshone property as marital property and (2) used that portion as part of the marital estate when calculating the equalization payment between husband and wife.
¶ 21 We reverse that part of the trial court's division of the marital property. We remand the case to the trial court to re-determine the division of marital property and marital debt after setting aside all the Shoshone property as husband's separate property. See Krejci, ¶ 18 (noting that change in the composition of the marital estate requires reconsideration of the entire property distribution). On remand, "[i]t is within the trial court's discretion to receive additional evidence or ... to rely ... on the record of [the] previous evidentiary hearing." See In re Marriage of Lee, 781 P.2d 102, 104 (Colo.App.1989) ; cf. In re Marriage of Wells, 850 P.2d 694, 695 (Colo.1993) (following remand to redistribute marital property, trial court must consider present economic circumstances of spouses and may take additional evidence of change in circumstances since date of dissolution decree).
¶ 22 We reject husband's argument that the trial court was required to allocate the debt for the line of credit equally between husband and wife, rather than allocating it entirely to him and requiring wife to make an equalization payment. See In re Marriage of Wormell, 697 P.2d 812, 814 (Colo.App.1985) ("[T]he mechanism employed ... for dividing the marital estate is a matter within the trial court's discretion."). Accordingly, we conclude that the trial court is not required to change its method of allocating this debt on remand.
B. Wife's Expenditure of Marital Funds to Retire Separate Debt
¶ 23 A litigant who abandons an argument in the trial court likewise abandons it for the purposes of appeal. See Brody v. Hellman, 167 P.3d 192, 199 (Colo.App.2007) ; Herrera v. Anderson, 736 P.2d 416, 418 (Colo.App.1987). "[I]t goes without saying that one who affirmatively seeks relief ... must pursue his request to its disposition before he can complain." Herrera, 736 P.2d at 418 ; see also JW Constr. Co. v. Elliott, 253 P.3d 1265, 1271 (Colo.App. 2011) (holding that identification of issue in answer and trial management certificate, without more, failed to preserve it for appellate review).
¶ 24 We agree with husband that he initially asked the trial court to restore the marital funds that wife had spent to retire her separate premarital debt to the marital estate and to credit them to her. But after reviewing the record, we conclude, for the following two reasons, that he intentionally abandoned this argument.
¶ 25 First, during arguments at the end of the permanent orders hearing, husband's attorney admitted that the proposed property and debt spreadsheet that he had presented to the court did not reflect this argument.
¶ 26 Second, the attorney acknowledged that husband was no longer pursuing such a result. Husband instead wanted the trial court to divide the marital assets unequally to account for wife's use of the money from the line of credit to pay her separate debt.
*647 In other words, it was his position that wife's depletion of this marital asset for her separate debt purposes would be a proper equitable basis that would support the court's decision to divide the marital estate unequally.
¶ 27 The court asked husband's attorney several questions to clarify his position. In the course of this colloquy, the court characterized husband's position as having changed because husband was no longer urging the court to return wife's payments to the marital estate and to credit them to her. Husband's attorney did not object to this characterization of this argument, and he did not ask the court to proceed differently. He responded, instead, with the single word, "sure."
¶ 28 Based on this change in husband's position, the court, during its oral findings, stated that it was not "bringing back on to the marital spreadsheet the premarital debt that was paid off during the course of the marriage." Instead, the court stated that, in dividing the marital estate equitably, it had considered that wife had used marital property to retire her separate debt.
¶ 29 We also conclude that husband invited any error that the court may have committed when it accounted for these funds. He submitted a proposed marital property and debt division chart that did not include the funds from the line of credit that wife had spent on her separate debt. And he agreed with the court that bringing these funds back into in the marital estate was no longer part of his argument. He cannot now challenge any such putative error on appeal. See Horton v. Suthers, 43 P.3d 611, 618 (Colo.2002) ; see also In re Marriage of Huff, 834 P.2d 244, 254 (Colo.1992) (holding that spouse who submitted financial affidavits treating particular property as marital could not then question on appeal the trial court's classification of the property as marital); In re Marriage of Tognoni, 313 P.3d 655, 658 (Colo.App.2011) (noting that spouse could not argue on appeal that the trial court erred in the manner in which it applied his child support payments to reduce his arrearages when his own calculations applied the payments in the same manner).
¶ 30 We will not address this issue because husband has intentionally abandoned it and because he invited any error that the trial court putatively committed. Accordingly, we further conclude that the trial court is not required to change its method of allocating this debt on remand.
III. Conclusion
¶ 31 The part of the judgment designating a portion of husband's Shoshone property as marital property is reversed. The case is remanded for the trial court to reconsider the property and debt distribution as necessary in light of this change in the marital estate. The judgment is affirmed in all other respects.
JUDGE FOX and JUDGE ASHBY concur.