FILED

05/13/2022

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2021 Session

**DEBRA JEAN GRIFFITH-BALL v. STANLEY LAUREN BALL**

**Appeal from the Circuit Court for Montgomery County**
**No. CC-19-CV-0029    Kathryn Wall Olita, Judge**

_____

**No. M2020-00509-COA-R3-CV**
_____

A husband and wife divorced after a long marriage. They disputed whether certain assets were marital or separate property and whether the wife was entitled to alimony. The trial court found that the disputed assets were the husband's separate property. And it awarded the wife alimony *in futuro*, as well as attorney's fees as alimony *in solido*. Upon our review, we find the evidence preponderates against the finding that the assets are separate property. So, with those assets included in the marital estate, we remand for a new property division. And, because the division of marital property is a factor in awarding alimony, we vacate the alimony awards. On remand, the court should consider whether alimony is still appropriate under its new property division and, if so, the type, amount, and duration of the award.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part; Vacated in Part; and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KENNY W. ARMSTRONG, J., joined.

Daniel P. Bryant, Clarksville, Tennessee, for the appellant, Stanley Lauren Ball.

Steven C. Girsky, Clarksville, Tennessee, for the appellee, Debra Jean Griffith-Ball.

# OPINION

## I.

### A.

In January 2020, the Circuit Court for Montgomery County granted Stanley Ball ("Husband") and Debra Griffith-Ball ("Wife") a divorce. They had been married for 34 years and were both 65 years old. At the start of the parties' marriage, Husband was a car salesman and in the Army Reserves. Wife owned her own business as a hairdresser.

A couple of years into the marriage, the parties had two daughters, prompting Husband to return to active duty in the Army. His career required the parties to move many times, which made it difficult for Wife to continue her hairdressing career. So she became a homemaker and stay-at-home parent to the parties' children.

Around 2006 or 2007, Wife began working for the Clarksville Montgomery County School System in the special education department. And, in 2011, Husband retired from the Army after serving for over thirty years. He retired with a VA disability rating of 80%—which later changed to 100%—because of post-traumatic stress disorder, depression, migraines, back and knee problems, and sleep apnea.

Husband received monthly VA disability benefits that he deposited in a Fortera Credit Union account solely in his name. With this account, Husband purchased a property on Granny White Road to lease to one of the parties' now-adult daughters under a lease-purchase agreement. He also purchased a Dodge pickup for himself with the account. The account was funded only with Husband's VA disability benefits and the monthly rent from the daughter.

At the time of divorce, in addition to VA disability benefits, Husband received military retirement pay and Social Security benefits each month. His gross monthly income was $10,354. He claimed monthly expenses of $3,803.

Meanwhile, Wife still worked for the school system as a teacher's aide for a special education pre-kindergarten class. She also received Social Security. Her gross monthly income from these sources was $2,090.18. But Wife's job was physically demanding, and she suffered from arthritis and sciatica. So she was unsure how much longer she could continue working. Wife claimed monthly expenses of $3,926.

## B.

At trial, the parties agreed to much of the property division. Among other things, they agreed that Wife should receive half of Husband's retirement pay for the portion of his career that occurred during the marriage. So the trial court awarded Wife approximately $2,050 per month from Husband's retirement pay.

The parties disputed whether the Fortera account and the purchases made from the account were marital or separate property. Husband argued that federal law prevents classifying VA disability benefits as marital property. So he claimed that the account was his separate property. Because the Granny White property and Dodge pickup were easily traced to the account, he also claimed that those items were his separate property. Wife acknowledged that the court could not divide Husband's VA disability benefits going forward. But she argued that the Fortera account was "an asset accumulated during the marriage that should be equitably divided." And, in addition to VA benefits, the Fortera account consisted of monthly rent from the parties' daughter. So Wife also contended that the account became marital property under the doctrines of commingling and transmutation.

The parties also disputed whether Wife was entitled to alimony. Husband argued that Wife's income could cover her monthly expenses, especially when considering her share of Husband's retirement pay. And, in Husband's view, Wife had "substantial separate assets" and would "be taking a substantial sum of cash and other assets in the division of marital property." Wife countered that her age and physical limitations would keep her from working in the future. And Husband's "substantial income" left him "more than capable" of paying alimony *in futuro*. Wife also sought alimony *in solido* to cover attorney's fees.

The trial court found that the disputed assets were Husband's separate property. The court reasoned that the Fortera account was in Husband's separate name, and "Wife has had no access to it." Although the Granny White property was titled in both parties' names, Husband purchased it with his separate Fortera account. And he purchased it to lease to the parties' daughter, not for the parties to live there themselves. There was "no evidence" that Husband intended to gift the property to the marital estate. Husband also purchased the Dodge pickup with the Fortera account. So the pickup could likewise be "traced into" Husband's separate property.

As for alimony *in futuro*, the trial court awarded Wife $2,000 per month. Wife had "limited earning capacity" because of her physical issues. And, earlier in the marriage, her support of Husband's career prevented her from developing her own. Wife was also "financially disadvantaged as compared with Husband." After considering Wife's portion of Husband's retirement pay, Husband still earned "nearly twice" what Wife did. Most importantly, Wife showed "a documented need of $2,044.72 per month," and Husband had

3

the ability to pay. Husband earned over $100,000 per year and had a monthly surplus of $2,800. He also left the marriage "with substantial separate assets."

The trial court also agreed with Wife that she was entitled to alimony *in solido*, awarding her $15,000 "to go toward the attorney fees she incurred." Husband had argued that his VA disability benefits could not be considered as income "for any purpose." But the court found this argument "contrary to the existing law." And it contributed to the need for a trial and an increase in Wife's attorney's fees. The court also considered that Wife had not received her portion of Husband's retirement "for the nearly [twelve] months th[e] matter ha[d] been pending."

## II.

On appeal, Husband argues that the trial court erred in granting Wife alimony *in futuro* and alimony *in solido*. Alternatively, he argues that the awards were too high. For her part, Wife argues that the Fortera account, Granny White property, and Dodge pickup should have been classified as marital property. Both parties also request attorney's fees on appeal.

Because this was a bench trial, our review is de novo on the record with a presumption that the trial court's factual findings are correct, unless the evidence preponderates against those findings. TENN. R. APP. P. 13(d). Evidence preponderates against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). We review the trial court's conclusions of law de novo with no presumption of correctness. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006).

## A.

The division of marital property and each party's separate assets impact the question of alimony. *See* Tenn. Code Ann. § 36-5-121(i)(7)-(8) (2021). So we start with Wife's issues on appeal. Dividing a marital estate "must start with the classification of the parties' property." *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003); *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007). Property is classified "as either marital or separate." *Keyt v. Keyt*, 244 S.W.3d 321, 328 (Tenn. 2007); *Brown v. Brown*, 913 S.W.2d 163, 166 (Tenn. Ct. App. 1994). And "only marital property is equitably divided between the parties." *Oakes v. Oakes*, 235 S.W.3d 152, 158 (Tenn. Ct. App. 2007); *see* Tenn. Code Ann. § 36-4-121(a)(1) (2021). Separate property "is not part of the marital estate and is therefore not subject to division." *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). The classification of property as marital or separate is a question of fact. *Stratienko v. Stratienko*, 529 S.W.3d 389, 398-99 (Tenn. Ct. App. 2017). All property "acquired by either or both spouses during the course of the marriage" is marital property. Tenn. Code Ann. § 36-4-121(b)(1)(A).

4

Here, Husband funded the Fortera account with rent income from the parties' daughter and VA disability benefits that he received during the marriage. Rent income earned during marriage is marital property under Tennessee law.[1] *See id.*; *see also Wade v. Wade*, 897 S.W.2d 702, 716 (Tenn. Ct. App. 1994) (reasoning that "whatever [a spouse] earn[s] during the marriage" is marital property). But federal law governs whether Husband's VA benefits can be divided as marital property.

The anti-attachment provision exempts "[p]ayments of [VA] benefits due or to become due" from "attachment, levy, or seizure by or under any legal or equitable process whatever." 38 U.S.C. § 5301(a)(1). The division of property in a divorce proceeding "is certainly 'legal or equitable process.'" *Stacy v. Stacy*, 144 N.E.3d 899, 904 (Mass. App. Ct. 2020). And "attachment, levy, or seizure" should not be read narrowly. *See id.* To do so would not "be consistent with the statute's evident purpose." *Id.* Simply put, federal law prohibiting attachment serves to preempt state law on division of marital property. *See Mansell v. Mansell*, 490 U.S. 581, 590 (1989)[2] (citing *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 584 (1979); *Wissner v. Wissner*, 338 U.S. 655, 658-59 (1950)). Thus, the anti-attachment provision generally prevents dividing VA disability benefits as marital property. *See Rickman v. Rickman*, 605 P.2d 909, 911 (Ariz. Ct. App. 1980); *In re Marriage of Green*, 169 P.3d 202, 204 (Colo. App. 2007); *In re Marriage of Wojcik*, 838 N.E.2d 282, 295 (Ill. App. Ct. 2005); *In re Marriage of Howell*, 434 N.W.2d 629, 633 (Iowa 1989); *West v. West*, 736 S.W.2d 31, 32 (Ky. Ct. App. 1987); *Stacy*, 144 N.E.3d at 904; *Strong v. Strong*, 8 P.3d 763, 768 (Mont. 2000); *Ex parte Johnson*, 591 S.W.2d 453, 456 (Tex. 1979); *Pfeil v. Pfeil*, 341 N.W.2d 699, 701-02 (Wis. Ct. App. 1983).

But VA benefits lose the protections of the anti-attachment provision and become marital property when "commingled with marital assets." *In re Marriage of Green*, 169 P.3d at 204; *accord In re Marriage of Hapaniewski*, 438 N.E.2d 466, 471 (Ill. App. Ct. 1982); *see also Hawes v. Stephens*, 964 F.3d 412, 417 (5th Cir. 2020) (concluding that the anti-attachment provision did not apply to VA benefits commingled with other funds); *cf. Angell v. Angell*, 777 N.W.2d 32, 34-35, 40 (Minn. Ct. App. 2009) (holding that death-gratuity benefits remained exempt under the anti-attachment provision when not commingled with marital property); *Pfeil*, 341 N.W.2d at 702 (same, regarding VA

---

[1] Husband argues that the rent "should not count as income." In his view, the monthly payments were loan repayments because Husband and the parties' daughter had a lease-purchase arrangement. Regardless, payments received under lease-purchase agreements "are generally rental income." I.R.S. Pub. No. 527, Residential Rental Property, 3 (Jan. 19, 2022), https://www.irs.gov/pub/irs-pdf/p527.pdf.

[2] In *Mansell v. Mansell*, 490 U.S. 581 (1989), the United States Supreme Court held that state courts cannot "treat as property divisible upon divorce military retirement pay that has been waived to receive [VA] disability benefits." *Id.* at 594-95. Here, Husband did not waive any retired pay to receive VA disability benefits. He receives Concurrent Retirement and Disability Pay, which allows a qualified service member to receive disability benefits without a corresponding reduction in retired pay. *See* 10 U.S.C. § 1414(a)(1).

benefits). Separate property becomes marital property by commingling "if inextricably mingled with marital property." *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) (citations omitted).

Here, Husband "jeopardized the identity of his separate [VA] funds" when he combined them with marital rent income in the Fortera account. *See Eldridge v. Eldridge*, 137 S.W.3d 1, 17 (Tenn. Ct. App. 2002); *see also Ogle v. Duff*, No. E2016-01295-COA-R3-CV, 2017 WL 2275801, at *8 (Tenn. Ct. App. May 24, 2017) (reasoning that an account "may have become marital property . . . [by] commingling if [the husband] contributed marital funds to the account during the marriage"). It was his burden to show that the benefits "continued to be segregated" or "could be traced into their product." *See Eldridge*, 137 S.W.3d at 17; *see also United States v. Griffith*, 584 F.3d 1004, 1021 (10th Cir. 2009) (explaining that, "even if VA funds are commingled in an account with other funds, they will retain their VA character as long as they are readily traceable"); *In re Seneca Oil Co.*, 906 F.2d 1445, 1452 (10th Cir. 1990) ("[M]ere commingling of . . . funds does not defeat tracing."); *accord In re Dameron*, 155 F.3d 718, 723-24 (4th Cir. 1998); *First Fed. of Mich. v. Barrow*, 878 F.2d 912, 915 (6th Cir. 1989).

Husband did not meet this burden. He only offered proof of the total value of the account; he did not show how much came from separate VA benefits as opposed to marital rent income. The two sources of funds were not segregated, and no amount of funds was traced to either source. *See Darnell v. Darnell*, No. E2018-02007-COA-R3-CV, 2019 WL 3781456, at *6 (Tenn. Ct. App. Aug. 12, 2019) (finding commingling where the wife did not prove how many times she deposited marital funds into a separate account or the amount of the deposits); *Hirt v. Hirt*, No. E2004-00354-COA-R3-CV, 2005 WL 292414, at *9 (Tenn. Ct. App. Feb. 8, 2005) (finding commingling where "there was absolutely no proof" showing how much of the money in an account was separate or marital); *cf. Smith v. Smith*, 93 S.W.3d 871, 879 (Tenn. Ct. App. 2002) (no commingling where an accountant "determine[d] the value of the accounts that was attributable to" separate property). So Husband's VA benefits lost their exempt status under the anti-attachment provision and became marital property by commingling.

Because Husband funded the Fortera account with marital income, the account is "presumed to be marital property." *See Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007). Husband failed to rebut this presumption. *See Owens*, 241 S.W.3d at 485-86 (reasoning that a party seeking to rebut the presumption must prove "by a preponderance of the evidence that the asset is separate property"). At trial, he relied on the fact that the account was in his name only, and Wife had no access to it. But income earned during the marriage is marital property "regardless of the bank account into which it [i]s deposited." *Wade*, 897 S.W.2d at 716; *see Wilson v. Moore*, 929 S.W.2d 367, 374 (Tenn. Ct. App. 1996) (holding that a salary earned during the marriage was marital property even though the husband "deposited [it] into his separate accounts"). And the account did not meet any definition of separate property. *See* Tenn. Code Ann. § 36-4-

121(b)(2). So the evidence preponderates in favor of a finding that the Fortera account was marital property.

As for the Granny White property, Husband purchased it with the Fortera account before commingling his VA benefits with marital rent income. He did not earn the rent income until purchasing the house and leasing it to the parties' daughter. But, unlike VA benefit funds that remain separate from other funds, the Granny White property purchased with such funds is not exempt under the anti-attachment statute. VA benefits only remain exempt if they "are readily available as needed for support and maintenance, . . . retain the qualities of moneys, and have not been converted into permanent investments." *Porter v. Aetna Cas. & Sur. Co.*, 370 U.S. 159, 162 (1962) (construing predecessor statute).

Here, Husband's VA benefits "lost the qualities of moneys" when used to purchase the Granny White property. *See Trotter v. Tennessee*, 290 U.S. 354, 356 (1933). They were no longer "[p]ayments of benefits due or to become due." *See* 38 U.S.C. § 5301(a)(1); *see also Carrier v. Bryant*, 306 U.S. 545, 547 (1939) (reasoning that investments "purchased with . . . benefits are not such payments due or to become due" under the anti-attachment provision). Instead, they "were converted into [real estate]." *See Trotter*, 290 U.S. at 356. So "there was an end to the exemption." *See id.* (analyzing the tax exemption in the anti-attachment statute); *see also Pfeil*, 341 N.W.2d at 702-03 (holding that VA benefits "lost their exemption when invested in [a] real estate purchase" and a mortgage note); *accord Bischoff v. Bischoff*, 987 S.W.2d 798, 800 (Ky. Ct. App. 1998).

Because the Granny White property was not exempt under the anti-attachment statute, it need not be classified as Husband's separate property. And, under our statutes, it is marital property. Husband acquired it during the marriage, and it does not otherwise satisfy any definition of separate property. *See* Tenn. Code Ann. § 36-4-121(b)(1)(A), (b)(2).

The Dodge pickup was likewise marital property. Husband purchased it with the Fortera account after commingling his VA benefits with marital rent income. His VA benefits had lost their exempt status and become marital property along with the rent income.[3] And "property purchased during the marriage with marital earnings is marital property." *Gorbet v. Gorbet*, No. W2011-01879-COA-R3-CV, 2012 WL 4847090, at *12 (Tenn. Ct. App. Oct. 11, 2012) (citing *Wade*, 897 S.W.2d at 716-17); *see Mahler v. Mahler*, No. 01A01-9507-CH-00303, 22189, 1997 WL 187130, at *3 (Tenn. Ct. App. Apr. 18, 1997) (finding that property purchased with marital funds was marital property).

---

[3] The vehicle would not have been exempt under the anti-attachment provision regardless. *See Gray v. Gray*, 922 P.2d 615, 619-20 (Okla. 1996) (holding that VA benefits lost their exempt status when used to purchase two vans and a motor home).

The evidence preponderates in favor of a finding that the Fortera account, Granny White property, and Dodge pickup are marital assets. With these assets included in the marital estate, we remand the case for the trial court to reconsider the equitable division of the parties' marital property.

B.

Tennessee law "recognizes several distinct types of spousal support." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 107 (Tenn. 2011). Among them are alimony *in futuro* and alimony *in solido*. *Id.* Both are forms of long-term support. *Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012). Alimony *in futuro* "provide[s] financial support to a spouse who cannot be rehabilitated." *Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2001). Alimony *in solido* is often awarded "to adjust the distribution of the parties' marital property." *Gonsewski*, 350 S.W.3d at 108 (citation omitted). An award of alimony *in solido* may include attorney's fees. Tenn. Code Ann. § 36-5-121(d)(5).

Decisions on spousal support are "factually driven and involve[] the careful balancing of many factors." *Gonsewski*, 350 S.W.3d at 105 (footnote omitted). Trial courts "have broad discretion to determine whether spousal support is needed and, if so, the appropriate type of alimony, amount, and duration." *Watson v. Watson*, 309 S.W.3d 483, 497 (Tenn. Ct. App. 2009).

Here, the trial court awarded Wife $2,000 per month in alimony *in futuro* and $15,000 in attorney's fees as alimony *in solido*. Each party's separate property and the division of marital property are both relevant factors in making such awards. Tenn. Code Ann. § 36-5-121(i)(7)-(8). And, as explained above, a new division of marital property is necessary. So, on remand, the trial court should also make a fresh determination on whether alimony is appropriate, and, if so, the type, amount, and duration of the award. *See id.* § 36-5-121(i). For the court to find that an award of attorney's fees is still appropriate, it must determine that the requesting party "lacks sufficient funds to pay his or her own legal expenses" or "would be required to deplete his or her resources in order to pay them." *See Gonsewski*, 350 S.W.3d at 113. Below, there was no evidence of Wife's attorney's fees to support a fee award.

C.

Husband and Wife both request an award of attorney's fees on appeal under Tennessee Code Annotated § 36-5-103(c) (2021). An award of attorney's fees under this statute is in our discretion. *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008). We consider "the ability of the requesting party to pay his or her own attorney's fees, the requesting party's success on appeal, and whether the requesting party has been acting in good faith." *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004).

8

Here, Husband did not include his request for attorney's fees as an issue on appeal. So he has waived the issue. *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) (reasoning that "an issue may be deemed waived when it is argued in the brief but is not designated as an issue"). And, in our discretion, we decline to award Wife attorney's fees on appeal.

## III.

We reverse the trial court's determination that the Fortera account, Granny White property, and Dodge pickup were Husband's separate property. With these assets part of the marital estate, we remand for a reconsideration of the property division. The trial court should also consider whether its new property division impacts its awards of alimony. So we vacate the alimony awards and remand for a determination of whether alimony is appropriate and, if so, the type, amount, and duration of alimony. We decline to award attorney's fees on appeal.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE